## Clauer *v.* Clauer, Appellants.

*Deed—Delivery—Recording—Presumption.*

The presumption from the recording of a deed and its possession by a grantee is that it has been duly delivered, but if it was not delivered by the grantor during his lifetime, but found after his death by the grantee and then taken possession of and recorded, it is not a sufficient delivery, and the deed will not be operative to pass title in the grantee.

*Deed—Surrender—Recording—Fraud—Equity—Married women.*

Where a married woman takes a deed of land, pays part of the purchase money, enters upon possession with her husband, but subsequently surrenders possession to the grantor, gives back the deed and receives what she had paid on account of the purchase money, she cannot, after the death of the grantor many years afterwards, by surreptitiously taking the deed from amongst the grantor's papers and recording it, secure any title to the land. In such a case the real owner of the land has a standing in a court of equity to compel a surrender and cancelation of the deed.

As a general rule courts of equity have jurisdiction to relieve against every species of fraud. The jurisdiction is expressly given by the Act of June 13, 1840, sec. 39, P. L. 666. Where the remedy at law is not full or adequate, the jurisdiction of equity is undoubted.

*Married women—Estoppel—Fraud.*

A married woman should be held to the observance of that good faith

in her dealings with the world to which others are bound; her protection is for the prevention of fraud; she should not thereby be enabled with impunity to defraud others.

Argued Dec. 2, 1902.    Appeal, No. 266, Oct. T., 1901, by defendants, from decree of C. P. Schuylkill Co., Nov. T., 1898, No. 1, on bill in equity in case of George Clauer v. Mary N. Clauer, Fianna Groh and George Groh.    Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Bill in equity for the cancelation of a deed.    Before MARR, J.

The facts are stated in the opinion of the Superior Court.

The court entered the following decree :

And now, September 2, 1901, after full hearing and argument and due consideration by the court, it is now ordered, adjudged and decreed that the said Fianna Groh and George Groh, her husband, deliver up to George Clauer, the complainant, for cancelation, the deed of Jacob Clauer to Fianna Wolf (now Groh) dated February 10, 1886, and that the same be canceled, and that the recorder of Schuylkill county shall cancel the record of same as it appears in deed book No. 242, page 400, etc.; and it is further ordered and decreed that said Fianna Groh and her husband, George Groh, shall execute a good and sufficient deed to complainant for the premises in controversy, and that they shall deliver possession of the premises to the complainant.    The costs of this suit to be paid by respondents.

*Error assigned* among others was the decree of the court.

*J. W. Moyer*, for appellants.—Equity had no jurisdiction: North Penna. Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507; Gass's App., 73 Pa. 39; Frisbee's App., 88 Pa. 144; Grubb's App., 90 Pa. 228; Barclay's App., 93 Pa. 50; Richard's App., 100 Pa. 51; Long's App., 92 Pa. 171; Washburn's App., 105 Pa. 480; Ferguson's App., 117 Pa. 426; Duncan v. Iron Works, 136 Pa. 478; Saunders v. Racquet Club, 170 Pa. 265; North Shore R. R. Co. v. Penna. Co., 193 Pa. 641; Dull's App., 113 Pa. 510; Slegel v. Lauer, 148 Pa. 236; Petery's Appeal, 129 Pa. 121.

No estoppel can be set up against a married woman: Kirkland v. Hepselgefser, 2 Grant, 84; Rumfelt v. Clemens, 46 Pa. 455; Glidden v. Strupler, 52 Pa. 400; Dunham v. Wright, 53 Pa. 167; Graham v. Long, 65 Pa. 383; Burk's App., 75 Pa. 141; Grim's App., 105 Pa. 375; Stivers v. Tucker, 126 Pa. 74; Logan v. Gardner, 136 Pa. 588; Spencer v. Reese, 165 Pa. 158; Trimmer v. Heagy, 16 Pa. 484; Paul v. Kunz, 188 Pa. 504.

*A. W. Schalck,* with him *N. Heblich,* for appellee.—Equity had jurisdiction: Meurer's App., 119 Pa. 115; Mortland v. Mortland, 151 Pa. 593; Houseman v. Grossman, 177 Pa. 453; Fowler's App., 87 Pa. 449; Orr v. Peters, 197 Pa. 606; Petery's App., 129 Pa. 121.

Appellant is estopped: McCullough v. Wilson, 21 Pa. 436; Bigham's App., 123 Pa. 262; Bucknor's Est., 136 Pa. 23.

OPINION BY ORLADY, J., March 12, 1903:

Jacob Clauer, the owner of the land in controversy, on February 10, 1886, conveyed it to Fianna Wolf (now Groh), who with her husband resided upon the premises for about a year, when they abandoned the property and returned the deed, which had not been recorded, to Jacob Clauer, who at once took possession of the premises, leased it, paid the taxes, and exercised exclusive ownership up to the time of his death. The consideration mentioned in the deed was $1,200, of which $200 was paid at the time the deed was delivered, and which amount was repaid to Fianna Wolf by Jacob Clauer after the surrender of the deed to him. Jacob Clauer died January 29, 1894, and Mary Clauer, widow and administratrix, on July 9, 1895, petitioned the orphans' court for the sale of this real estate for the payment of debts, and under these proceedings the land involved was sold by the trustee, appointed by the court, to George Clauer, which sale was confirmed September 9, 1895, pursuant to which the trustee executed and delivered a deed to the plaintiff herein. After the death of Jacob Clauer in 1894, Mary N. Clauer and Fianna Wolf (now Groh) discovered, among the papers of Jacob Clauer, the deed of Jacob Clauer and wife to Fianna Wolf. The court below finds " that Fianna, after the death of Jacob Clauer, fraudulently took the deed which she

had given to him from amongst his private papers, had the same recorded, and then fraudulently obtained a possession of the premises from the tenants residing thereon."

The plaintiff filed a bill in equity against the administratrix, Fianna Groh, and her husband, George Groh, to require them to deliver up the deed of George Clauer and wife to Fianna Wolf (now Groh), and to reconvey the premises described therein to the plaintiff and after full hearing on bill, answer and proof, the court entered a decree directing Fianna Groh and George Groh, her husband, "to deliver up to George Clauer for cancelation, the deed of Jacob Clauer to Fianna Wolf, and that they execute a good and sufficient deed to the complainant for the premises in controversy," etc., from which Fianna Wolf (now Groh) took an appeal. After a careful examination of all the evidence in this case, we are satisfied that the findings of fact are amply supported by competent testimony. It must be conceded that the taking of the deed of Fianna Groh from among the private papers of Jacob Clauer, after his death, could not pass any title to the land described in the deed, inasmuch as it lacked every element of delivery by him, and it being an initial principle that a deed takes effect from its delivery, which is a constituent part of the act of execution. The presumption from the recording of a deed and its possession by a grantee is that it has been duly delivered, but if it was not delivered by the grantor during his lifetime, but found after his death by the grantee and then taken possession of and recorded, it is not a sufficient delivery, and the deed would not be operative to pass title in the grantee: Critchfield v. Critchfield, 24 Pa. 100.

This is not a case of the grantee altering or destroying the title deed, in which case he may yet have title to the land until it has passed to another by some method of conveyance recognized by law, as suggested in Rifener v. Bowman, 53 Pa. 313. But where the fact is found with like solemnity of a verdict, that the grantee is in possession under a deed, which she had originally surrendered to her grantor and after his death had fraudulently taken from among his private papers, she had no right to the possession of the paper, and her taking possession of it was an offense against honesty and good morals. She could not, in this way, gain title or the right to possession of land for

which she had originally agreed to pay $1,200, but in fact had paid nothing, and had voluntarily surrendered to the grantor and thus impart vitality to a deed which had been withheld from her for a number of years during the life of the grantor. The fact that she is a married woman does not change the application of rules and decisions which have been enforced time out of mind to prevent frauds; and her surrender of the deed to be canceled with the intention of reconveying the title in the grantor, estops her as effectually as if she had reconveyed it. She put it out of her power at that time to produce the deed to sustain a title; and put it in the power of the grantor to cancel or destroy it, or what is in effect the same thing, to detain it from her: Mussey v. Holt, 24 N. H. 248; s. c., 55 Am. Dec. 234. Nor did the fact that she placed the deed on record after thus gaining possession of it, add in anyway to its validity. It was still her act based upon a fraudulent taking. The proposition that a married woman cannot be estopped by her own act is by no means of universal application. A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound; her protection is for the prevention of fraud; she should not thereby be enabled with impunity to defraud others: Grim's Appeal, 105 Pa. 375. See also Bigham's Appeal, 123 Pa. 262, and Turner v. Warren, 160 Pa. 336.

Under the facts in this case an action of ejectment would have been a tedious, ineffectual, expensive and inadequate proceeding, and the court of common pleas had concurrent jurisdiction to dispose of the case on its equity side. The fact that George D. Clauer knew of the deed being placed on record did not make it necessary for him to resort to a trial at law to recover possession of the land. He had the right to attack the deed under which Mrs. Groh was in possession, by showing that it was not the lawful deed of Jacob Clauer, whose land he purchased at the orphans' court sale. As stated by Judge STORY in his Treatise on Equity Jurisprudence, section 350, "it must be a fundamental policy to all enlightened nations to protect and subserve the right of creditors, and a great anxiety to afford full relief against frauds upon them has been manifested not only in the civil law, but, from a very early period, in the common law also." As a general rule courts of equity have jurisdic-

tion to relieve against every species of fraud. The jurisdiction is expressly given by our Act of June 13, 1840, sec. 39, P. L. 666, and has been constantly and repeatedly exercised since that time. Its process is plastic and may be readily modeled to suit the exigencies of the particular case. A court of equity proceeds with but little regard to mere form. It moves with celerity and seizes the fruits of a fraud in the hands of the wrongdoer: Fowler's Appeal, 87 Pa. 449. Where the remedy at law is not full or adequate, the jurisdiction of equity is undoubted: Bispham's Equity, section 200. See Mortland v. Mortland, 151 Pa. 593, Houseman v. Grossman, 177 Pa. 453, Bank of Pittsburg v. Loeffert, 184 Pa. 164, and Orr v. Peters, 197 Pa. 606.

We see no reason for disturbing the findings of fact as made by the court below, and the decree based thereon was justified under our decisions. The assignments of error are overruled and the judgment is affirmed.