## Tibbens *v.* Burrell, Appellant.

*Appeals—Equity—Findings of fact.*

1. The appellate court will not reverse the findings of a chancellor on questions of fact, unless clear and manifest error be pointed out.

*Equity—Fraud—Evidence.*

2. The procuring of a title through a confidence reposed, the violation of which is clearly fraudulent, may be shown by what occurred in the very transaction itself, and at the time of its consummation between the parties.

3. As a general rule courts of equity have jurisdiction to relieve against every species of fraud, and where the remedy at law is not full and adequate, the jurisdiction of equity is undoubted.

Argued March 1, 1911. Appeal, No. 7, Feb. T., 1911, by defendant, from decree of C. P. Clinton Co., July T., 1908, No. 1, on bill in equity in case of Edward Tibbens v. John A. Burrell. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Affirmed.

Bill in equity for a conveyance. Before Hall, P. J.

The court found the facts to be as follows:

1. That it was agreed between John A. Burrell and Joseph Neff and Edward Tibbens, prior to the sale of the land of Joseph Markle, deceased, on May 18, 1907, that said John A. Burrell should bid on the land advertised to be sold for and on behalf of Joseph Neff and Edward Tibbens and if it should be knocked down to him, the said Burrell, they, the said Neff and Tibbens, were to pay the purchase money and that Neff was to receive all of the land lying on the west of the public road and Tibbens all of the land lying on the east of the public road.

2. That it was subsequently agreed between the said Burrell and Neff and Tibbens, during the sale and when the property had been bid up to the sum of $705 by Burrell, on behalf of said Neff and Tibbens, that Burrell should continue bidding and should pay all of the bid in

excess of $705 and should be entitled, in consideration of the payment of the excess, to all the timber on the entire tract over six inches at the butt, while Neff and Tibbens were to have all the land and pay $705 of the bid.

3. That in accordance with this said agreement, John A. Burrell continued bidding on the land, which was finally knocked down to him for the sum of $805.

4. That after the property was knocked down at said sale Neff and Tibbens paid in cash ten per cent of $705, amounting to $70.50, as required by the terms of said sale, and Burrell paid ten per cent of $100, amounting to $10.00, being ten per cent of the amount of the final bid in excess of $705, in accordance with their said agreement. That at the time of said payment the said Burrell again agreed and stated that Neff was to have all the land lying west of the public road and Tibbens all of the land lying east of the public road, while he was to receive the timber.

5. That the entire consideration bid by Burrell, less the sum of $100, which Burrell was to pay for the timber, was paid by the said Neff and Tibbens and that this consideration was fully paid them prior to or at the time of the delivery of the deed for said land by John L. Heckman, executor, etc., of Joseph Markle, deceased, to said Burrell.

6. That the advertisement of said land described the same as containing twenty-five acres, more or less, while that portion lying east of the public road contained thirty-seven acres and six perches, and that portion lying west of the public road contained forty-two acres and 126 perches, amounting together to seventy-nine acres and 132 perches and that said entire tract, containing seventy-nine acres and 132 perches, was sold to said Burrell at said sale acting for and on behalf of the said Joseph Neff and Edward Tibbens.

7. That said John A. Burrell fraudulently concealed from the said Joseph Neff and Edward Tibbens the fact that said tract contained many more acres than was set forth in the advertisement and sale bills and he executed and delivered to George H. Neff, to whom the said Joseph

Neff had directed that said land be conveyed, a deed for seventeen acres and seventy-two perches, and at the time of the execution and delivery of said deeds he falsely and fraudulently represented to them that said deeds contained all the land sold at said sale with the intention and purpose of defrauding the said Joseph Neff and Edward Tibbens of the balance of said land, and Joseph Neff and Edward Tibbens accepted said deeds believing that the land as therein described included the entire tract.

8. That neither during the negotiations between said Burrell and Neff and Tibbens before the sale nor between that time and the execution and delivery of the deeds, was any portion of said land reserved by Burrell for his own use for any purpose whatever, nor did either the said Joseph Neff or Edward Tibbens agree, at any time, that the said Burrell should have any portion of the same for a mill site or for any other purpose.

The court decreed a reconveyance.

*Error assigned* was the decree of the court.

*Sidney D. Furst,* for appellant.

*B. F. Geary,* with him *W. C. Kress,* for appellee.

OPINION BY ORLADY, J., April 17, 1911:

The rule is well established, and it has been frequently announced, that to justify this court in reversing the findings of a chancellor on questions of fact, clear and manifest error must be pointed out. The trial judge has a better opportunity than we to judge of the credibility of the witnesses, and if his findings of fact are in accordance with the fair preponderance of the testimony, and the legitimate inferences of fact deducible therefrom, they are to be accepted as comprising the facts of the case: Byers v. Byers, 208 Pa. 23; Gay v. Chambers, 37 Pa. Superior Ct. 41; Strause v. Berger, 220 Pa. 367; McKay v. Meyer, Jonasson Co., 44 Pa. Superior Ct. 293.

The record in this case discloses a carefully designed fraud, which is evidenced by every step taken by the appellant, from the time he volunteered to act as the agent for Tibbins and Neff in bidding for them at the public sale, down to the time he delivered to them the deeds for about one-third of their intended purchase.

To say that the procuring of a title through a confidence reposed, the violation of which was clearly fraudulent, cannot be shown by what occurred in the very transaction itself and at the time of its consummation between the parties, would be to open the door to fraud and close it to an honest trust. "The statute of frauds is a salutary act, but to suffer it to become instrumental in the commission of such a palpable breach of faith would make it a source of the grossest injustice; and would enable a party to secure the fruit of every scheme into which he can induce a friend to enter with him, on terms of the greatest assurance. The authorities forbid this to be done:" Lingenfelter v. Ritchey, 58 Pa. 485; Robbins v. Farwell, 193 Pa. 37; Bennett v. Lumber Co., 28 Pa. Superior Ct. 495; Galbraith v. Galbraith, 190 Pa. 225.

As a general rule, courts of equity have jurisdiction to relieve against every species of fraud, and where the remedy at law is not full and adequate the jurisdiction of equity is undoubted: Clauer v. Clauer, 22 Pa. Superior Ct. 395.

A careful examination of all the testimony sustains the findings of fact by the learned trial judge and the decree entered by him was fully warranted by his conclusions of law. The assignments of error are overruled and the decree is affirmed.