mated acreage, it was held that the purchaser, who paid over the purchase-money for the quantity mentioned in the description and accepted title, could not recover in an action of assumpsit the amount of the deficiency.

It, therefore, appears to us that the verdict as rendered is correct, and that the rules for judgment non obstante veredicto and for a new trial should be discharged.

The lower court discharged defendant's rules for judgment non obstante veredicto and for a new trial. Defendant appealed.

*Error assigned,* among others, was in dismissing the defendant's motions for new trial and judgment n. o. v.

*H. M. Houser,* with him *B. F. Davis,* for appellant.

*M. G. Schaeffer,* with him *John M. Groff,* for appellee.

PER CURIAM, May 23, 1916:

This judgment is affirmed on the opinion of the learned president judge of the court below denying a new trial and refusing judgment for the defendant non obstante veredicto.

---

## Schwebel, Appellant, *v.* Wohlsen.

*Trusts and trustees—Trustee ex maleficio—Bill for accounting—Refusal.*

1. Where testator devised all his property to his wife for life with power to sell in fee during her lifetime, with a gift over to children in the event of a balance remaining at her death, and it appeared that the widow made a conveyance of certain of the real estate during her life, a bill in equity by the administrator of the widow and some of the children named in the will to have the purchaser declared a trustee ex maleficio of the property in question alleging that he received it under an oral trust for the benefit of

testator's heirs was properly dismissed where the allegations of the bill were responsively denied by the answer and were not supported by two witnesses or by one witness and corroborating circumstances.

2. In such case, had the purchaser held as trustee the proper party plaintiff would have been the administrator of the original testator.

Argued May 15, 1916.    Appeal, No. 425, Jan. T., 1915, by plaintiff, from judgment of C. P. Lancaster Co., Equity Docket No. 5, page 449, in equity, dismissing bill in equity to have defendant declared trustee ex maleficio, and for an accounting in case of Charles W. Schwebel, Daniel Schwebel, William G. Schwebel, Philip Schwebel, Charles P. Snyder and Charles P. Snyder, Guardian of Philip Snyder, and Charles W. Schwebel, Administrator of Maria Schwebel, Deceased, v. Anna S. Wohlsen, Executrix of the will of Peter N. Wohlsen, deceased. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity to have defendant declared trustee ex maleficio and for an accounting.

The facts appear from the following findings of fact and conclusions of law by HASSLER, J. :

1. Charles Schwebel died June 6, 1890, leaving a will and testament dated September 9, 1885, which has been duly proven. The second item of the will is as follows : "Second. I give, devise and bequeath unto my beloved wife, Maria, all my estate, real, personal and mixed, she to use the same and receive the rents and profits thereof, during the term of her natural life, and in case she desires, or deems it expedient, she may sell any or all of my real estate and make a title in fee simple to the purchaser or purchasers and the purchase-money so received she may apply to her own use, if she thinks the same necessary for her comfortable support and maintenance." The third item of the will is as follows: "Third. At the death of my said wife, if any part of my Estate shall still remain, I order that it shall be immediately converted

into money, and the whole of said residue I direct shall then be divided amongst all my children and the children of any that may be dead, per stirpes, in equal shares."

2. The said Charles Schwebel, at the time of his decease, left a widow, the said Maria Schwebel, and the following children, to wit:—

(1) Katie Snyder, wife of Philip Snyder, who died after the death of her father and before the death of her mother, leaving the following children:

a. Charles P. Snyder,

b. Anna, wife of Harry Gochnauer,

c. Katie,

d. May, wife of Walter Kendig,

e. Lily Brown, widow,

f. Philip Snyder, minor, of whom Charles P. Snyder is guardian.

(2) Elizabeth Bolbach, wife of Philip Bolbach,

(3) Charles W. Schwebel,

(4) Anna Wohlsen, wife of Peter N. Wohlsen, the defendant,

(5) Daniel Schwebel,

(6) Mary Bolbach,

(7) Frederick S. Schwebel,

(8) William G. Schwebel,

(9) Philip Schwebel.

3. The said Maria Schwebel died intestate on November 2, 1906, and letters of administration were duly granted on her estate by the register of wills of Lancaster County, on April 5, 1913, to the said Charles W. Schwebel, the oldest son.

4. Charles W. Schwebel, a son, Daniel Schwebel, a son, William G. Schwebel, a son, Philip Schwebel, a son, Charles P. Snyder, a grandson, and Philip Snyder, a minor, by his Guardian Charles P. Snyder, a grandson of the said Charles Schwebel, are the plaintiffs in this suit, and are legatees under the will of said decedent; and the said Charles W. Schwebel, as administrator of

the estate of Maria Schwebel, also joins as a party plaintiff in this suit.

5. The said Charles Schwebel died seized of four purparts of real estate and certain tracts of land situated in the southeastern part of the City of Lancaster, of great value.

6. Maria Schwebel, widow and executrix of Charles Schwebel, deceased, on May 28, 1895, made a deed, in which she conveyed in fee simple all of the premises of which Charles Schwebel died seized unto her son-in-law, Peter N. Wohlsen, which deed has been duly recorded. The consideration mentioned in the deed is $10,000, and Anna S. Wohlsen testified that that amount was paid. We find as a fact that the consideration mentioned in the deed, viz: $10,000, was the real consideration. Five thousand dollars of it was used to pay the debts of Charles and Maria Schwebel. This $5,000 was borrowed by Peter N. Wohlsen on a mortgage from the Peoples Trust Company of this city, and has since been paid by him. The only testimony that the consideration was not as mentioned in the deed is that of Hon. Charles I. Landis, who said it was not paid in his presence, and that he had no knowledge of what was done by the parties except what occurred in his presence. If he had testified positively that the full consideration had not been paid it would not have been sufficient to overcome the averment in the answer, as it would have been the testimony of but a single witness, without corroboration, and this is an attempt to alter or overthrow a written instrument.

7. As we cannot find as facts the material allegations of the plaintiffs' bill which are vital to their case and which are contained in the seventh, eighth and tenth paragraphs, we think it proper to explain our inability to do so.

The seventh paragraph is in substance that the property was conveyed by Maria Schwebel to Peter N. Wohlsen because she was unable through age and ill health to manage the same and because there were certain debts

which she and her husband had contracted and it was necessary to borrow money to pay the same, which she could not do; that it was, therefore, agreed between the said Maria Schwebel and Peter N. Wohlsen that the property should be conveyed to him by a deed absolute in form, so that he might borrow the money on mortgage for the purpose of paying the debts which she and her husband, Charles Schwebel, had contracted; and that he might be in position to manage the property, for the purpose of preserving and conserving the same for the use of said widow and heirs of Charles Schwebel, deceased. The answer denies all these allegations and avers that the deed was for a cash consideration.

In order to overcome the denial of these allegations of the bill in the answer, it is necessary to do so by the testimony of two witnesses, or that of one witness and corroborating circumstances. Again, the only witness testifying on this subject is Hon. Charles I. Landis. He said the purpose of the conveyance was to enable Peter N. Wohlsen to borrow money to pay the debts contracted by Charles Schwebel and Maria Schwebel. He also testified that she was old and not always in good health. He does not testify that any agreement was made between Maria Schwebel and Peter N. Wohlsen that he was to manage the property, or that he was to preserve and conserve it for the use of the widow and heirs of Charles Schwebel, deceased. Even though another witness had testified to all that Judge LANDIS does testify to, or had he been corroborated in every particular of this testimony by circumstances, we could not find, in face of the denial, the fact that there was any agreement between Maria Schwebel and Peter N. Wohlsen that he was to preserve and conserve the property for the widow and heirs of Charles Schwebel, deceased, because he does not say there was one.

The eighth paragraph of the bill is as follows: "8. That the said Peter N. Wohlsen then and there agreed with the widow and heirs of the said Charles Schwebel,

that in consideration of said conveyance being made to him, he would hold the same for the use and benefit of the legatees under the will of the said Charles Schwebel; that is, for the use and benefit of the widow, Maria Schwebel, during her life, for her comfortable support and maintenance, and at her death, then, for the use and benefit of the children and grandchildren of the said Charles Schwebel, and he took the said title with the understanding and agreement that the said real estate was simply held by him in trust for the uses and purposes aforesaid, and that he would sell and dispose of the same, and use and distribute the net proceeds thereof according to the terms, and in the manner provided by said will of Charles Schwebel, deceased." This is denied in the answer. There is not a scintilla of testimony to support this averment of the bill. The only testimony is that of George Schwebel, who testifies that, on February 21, 1907, he was present at the home of Peter Wohlsen: "Q. What, if anything, did you hear Peter N. Wohlsen say in regard to this property? A. I remember distinctly that he said instead of settling it up now if the heirs are agreed, it shall go one year from date and the properties shall enhance in value and I remember also he said there was $1,000 debt yet on the property and the rents and other interest accruing in this will at that time, he thinks, blot out that $1,000 and the real estate will sell for a higher figure and everyone would be better off, and the heirs agreed. Q. Anything else that you heard him say with regard to the reason of his holding this property, or anything further? A. No more than as I stated that it was for the benefit of the heirs, that the money should be divided equally between the heirs, that is, the proceeds over and above the $1,000." T. Scott Woods, also, testifies that, on December 20, 1912, he went to the home of Peter N. Wohlsen with Charles Schwebel; that he heard Mr. Schwebel ask "him if he was ready to make a settlement, and he said he could use some money now; Mr. Wohlsen replied that he wasn't

quite ready yet, he said, 'I have nothing to settle up with.' " Whether the settlement that was referred to was for the properties in question, or any claim that the plaintiffs may have upon them, does not appear.

From this testimony we would not be justified in finding that, at the time the deed was made, any agreement such as is alleged in the bill was made. That no such agreement was made is further borne out by the fact that Peter N. Wohlsen took possession of the property as soon as it was conveyed to him and commenced extensive building operations upon it with his own money, or at least not with any money furnished by the widow or heirs of Charles Schwebel. This he would hardly have done, had he held the property in trust for the widow and heirs.

The tenth paragraph of the bill is as follows: "10. That frequently between the date of said deed, May 28, 1895, and the present time, the said Peter N. Wohlsen has admitted and stated to your orators and to others, that said conveyance was made to him for the use and benefit of the heirs of Charles Schwebel, deceased, as aforesaid, and at divers times, as lately as within the last two years past, he has called meetings of the heirs for the purpose of submitting an account and making a division thereof, but, upon the request of said heirs, he refused and neglected to render any account of the moneys received from the sale of the said real estate, and has refused and neglected to make any accounting of the said money received by him, and to make a division thereof among the legatees of the said Charles Schwebel, deceased; and recently, for the first time, has set up a claim that the heirs of Charles Schwebel were not interested in this ground nor in the proceeds, realized from the said sales of portions thereof and that the same is and was his property, and has started to improve certain portions of the said property on South Marshall street, which still remain unsold; and has appropriated the proceeds of said sales to his own use." This is denied in the answer.

The only testimony is that of Charles Schwebel and T. Scott Woods, who have been referred to, which does not justify us in finding that any such agreement had been made.

### CONCLUSIONS OF LAW.

The deed from Maria Schwebel to Peter N. Wohlsen is absolute on its face, and there is no writing to show that it was to be a trust.   Under the act of assembly, we, therefore, could not find that he is trustee, unless a trust arises by operation of law.   We are unable to find any facts that show that a trust arose by operation of law. The plaintiffs are, therefore, not entitled to the relief prayed for.

We are further of the opinion that the administrator of Maria Schwebel can have no interest in this property in any event, as she had only been given a life estate, which ended with her death.   Nor do we think that the heirs of Charles Schwebel, deceased, can have any interest in it, unless there had been proof of an express agreement made with them.   Whatever interest they had was through the will of Charles Schwebel, deceased.   If Peter N. Wohlsen held as trustee, the administrator c. t. a. of Charles Schwebel would then be the one who would have to recover, and not the parties named as plaintiffs as his heirs.

We, therefore, dismiss the bill at the costs of the plaintiffs.

The lower court dismissed the bill.   Plaintiff appealed.

*Error assigned,* among others, was the order dismissing the bill.

*F. Lyman Windolph,* with him *J. W. Brown,* for appellants.

*S. R. Zimmerman*, with him *E. M. Gilbert*, for appellee.


PER CURIAM, May 23, 1916:

This decree is affirmed on the facts found and the legal conclusions reached by the learned judge below.

---

# Pennsylvania Utilities Company, Appellant, v. Lehigh Navigation Electric Company and the Public Service Commission of Pennsylvania.

*Corporations—Public Service Company—Rights of companies exercising franchises prior to the time the Public Service Commission Act of July 26, 1913, P. L. 1374, went into effect.*

Where it did not affirmatively appear that a Public Service Corporation had not, prior to January 1, 1914, the time the Public Service Commission Act of July 26, 1913, went into effect, actually commenced to exercise its franchises in the territory covered by its charter, it was not error to dismiss an appeal from the action of the Public Service Commission, refusing to interfere with the company's exercise of its franchises in the said territory.


Argued Jan. 14, 1916. Appeal, No. 8, May T., 1915, by Pennsylvania Utilities Company, from order of C. P. Dauphin Co., Commonwealth Docket 1914, No. 75, dismissing appeal from the action of the Public Service Commission in case of Pennsylvania Utilities Company v. Lehigh Navigation Electric Company and The Public Service Commission of Pennsylvania. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.


Appeal from the order of the Court of Common Pleas of Dauphin County dismissing appeal from decision of the Public Service Commission.

From the record it appeared that the appellant is a corporation duly incorporated under the laws of the