Leahey et al. *v.* Leahey et al., Appellants.

Argued October 5, 1932.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Edward J. Harkins,* of *Scanlan & Harkins,* for appellants.—Defendants being in possession of real estate and claiming title and right to possession by reason of a deed which was admittedly signed, sealed and acknowledged, cannot be deprived of such real estate without a trial by jury of the disputed questions of fact relative to the validity of their title: North Penna. Coal Co. v. Snowden, 42 Pa. 488; Goss v. Spencer, 245 Pa. 12; Richard's App., 100 Pa. 51; Williams v. Fowler, 201 Pa. 336; Washburn's App., 105 Pa. 480; Swearingen v. Barnsdall, 210 Pa. 84.

The effect of the answer cannot be overcome except by the testimony of two witnesses, or at least the testimony of one witness and corroborating circumstances: Campbell v. Brown, 183 Pa. 112; Mason v. Smith, 200 Pa. 270; Cragin's Est., 274 Pa. 1.

Under the circumstances the fact that the deed was in the safe at the time of her death was immaterial and could not defeat the rights of the grantees: Turner v. Warren, 160 Pa. 336; Cummings v. Glass, 162 Pa. 241; Chase v. Lumber Co., 213 Pa. 46.

*Albert W. Stenger,* for appellees.—Where the question of the legal title to land is incidental and subordinate to other elements, which call for the exercise of equitable remedies, equity will take and retain jurisdiction: Clauer v. Clauer, 22 Pa. Superior Ct. 395; Rutherford

Water Co. v. Harrisburg, 297 Pa. 33; Mortland v. Mortland, 151 Pa. 593.

The burden of proof shifted to defendants to show a delivery during the grantor's lifetime, when it appeared that the deed was found in the safe of the grantor after her death: Kanawell v. Miller, 262 Pa. 9.

OPINION BY MR. JUSTICE SCHAFFER, November 28, 1932:

Mary M. Leahey died intestate January 12, 1928. She left surviving twelve children. This bill in equity was brought by nine of them against the other three to procure the cancellation of a deed to the three as joint tenants, executed and acknowledged by the mother, but it is alleged never delivered. Following her death the unrecorded deed was found in the mother's house in a safe, said by plaintiffs to be her private safe. Sometime following her decease the deed was surreptitiously taken from the safe by the defendants and recorded. Thereupon plaintiffs began this proceeding. The court, after hearing, granted the relief prayed for, decreeing that the deed be cancelled and stricken from the record and that defendants account for the rents and profits they had received. From this decree defendants appeal.

Counsel for appellees summarizes the controversy, from his point of view, in a counterstatement of the questions involved substantially thus: Where a mother of twelve children signs, seals and acknowledges a deed, for a large farm underlaid with coal, as well as two other valuable tracts, including her home, wherein a consideration of one dollar is named, in which only three of her twelve children are named grantees, and places the deed, unrecorded, in her safe, and continues to collect the rents, make repairs, pay taxes and fire insurance premiums, and thereafter makes five deeds for part of the land described in the unrecorded conveyance to five of her children, who take possession thereof, which deeds the mother herself places of record, and after her death

the unrecorded deed is found in her safe and placed on record by the grantees named therein, without the knowledge and consent of the other nine children, and with the intention of cheating and defrauding them of their inheritance, was there a delivery of the deed to the three children during the mother's lifetime? The chancellor found there was not.

It is conceded on both sides that the question of delivery is the controlling one in the case. The deed is dated January 20, 1926. There was no evidence of any delivery except that given by one of the defendants, Francis Leahey. His testimony the chancellor did not credit. He said the deed was delivered to him by his mother on April 13, 1926, when he paid to her the consideration of one dollar named in it. He had no previous knowledge of such a paper. They were in the dining room of his mother's home, he testified, and she said she had something for him; she said, "Here's a paper for you"; and he took the paper and read the endorsement on the outside of it, and replied, "This is not for me, this is for Alma," to which the mother answered, "You are in it, I have to deliver it to you." He further testified that he did not open the deed or read it, but handed his mother a dollar bill and then started to open the paper, whereupon she said, "If you are curious, read it," and he answered, "I am not curious at anything you do." He immediately handed the deed back to her without reading it and she told him that she had to deliver it to Alma. The deed was endorsed "Mary M. Leahey to Alma Leahey et al." He admitted he did not know what property he was paying for, or what property was described in the deed, and that he never afterwards gave any thought to it or made any inquiry about it or did anything until the deed was produced after his mother's death.

Defendants make no claim to having had the deed in their possession during their mother's lifetime or even to knowing anything of its contents. The testimony

shows that none of the parties, plaintiff or defendant, knew of its contents until after their mother's death and that only one of them claims he knew of its existence. There is testimony that Alma said, after the deed was found, that it had been delivered to her, but there is also evidence that she said it had not been delivered and that she must so advise her lawyer. She, herself, when called by defendants, did not testify on this point. Some of the plaintiffs testified that statements were made by Alma and Agnes Leahey after the death of their mother that they knew nothing about the delivery of the deed in controversy. The door was therefore opened to both to deny this testimony and to give affirmative evidence as to the manner in which their mother delivered the deed to them, but the record can be searched in vain for such testimony. Another circumstance of moment bearing on the question of delivery is that when the mother made the deeds to the five children more than a year after the execution of that in question, she herself recorded them. Her failure to record the deed in controversy, and placing on record those which conveyed part of the same property, speaks very convincingly in aid of the conclusion that she had not intended the unrecorded deed to be an effective grant.

The court found as a fact that the safe in which the deed was found was the private safe of the mother. The court found also that after the death of the mother the three defendants secured possession of the deed without the knowledge or consent of the plaintiffs and on February 26, 1928, had it recorded. The court found further that the premises described in the deed remained in the mother's possession and control until the time of her death, except as to the lots conveyed by her to five of the children.

We agree with the conclusion of the chancellor that there was no satisfying evidence of the delivery of the deed. Undoubtedly the safe belonged to the mother. It was in her home and contained her private papers. That

other members of the household, including at least two of the defendants, at times may have had access to it and that apparently there were a few other papers in it belonging to some of the children does not establish that the safe was not the private safe of the mother.

While we are not prepared to go to the full length the chancellor went in holding that the retention of the deed in Mary M. Leahey's private safe among her other private papers raised a presumption that the deed had never been delivered, we do hold that its being found there cast the burden on defendants to show that it had been delivered. This burden was not met. See the cases of Turner v. Warren, 160 Pa. 336; Cummings v. Glass, 162 Pa. 241; Kern v. Howell, 180 Pa. 315; Clymer v. Groff, 220 Pa. 580. Proof of the deed to the defendants, duly acknowledged and recorded, placed the title and right of possession prima facie in the defendants, but the burden of proof shifted to the defendants to show a delivery in grantor's lifetime when it appeared that the deed was found in decedent's safe, unrecorded, after grantor's death: Kanawell v. Miller, 262 Pa. 9. In the opinion of Mr. Justice von MOSCHZISKER in that case are enumerated our decisions dealing with the question of the delivery of executed deeds found in the possession of the grantor at the time of his death.

The conclusion on the controlling question in the case leaves open for consideration minor questions with which appellants confront us. They say the suit should have been brought at law; that the bill is a mere ejectment bill, no fraud being averred as to the execution of the deed. This position ignores the true situation. Plaintiffs' contention is that defendants fraudulently took possession of and recorded the deed which had never become effective by delivery. As the chancellor points out, this allegation of fraud brings the case within equity jurisdiction under section 39 of the Act of June 13, 1840, P. L. 666 (Act of February 14, 1857, P. L. 39, extending its provisions throughout the State) : Clauer

v. Clauer, 22 Pa. Superior Ct. 395; Tibbens v. Burrell,
46 Pa. Superior Ct. 466; Custis v. Serrill, 303 Pa. 267.
Furthermore, plaintiffs, who pray for the cancellation
of the deed and an accounting, do not, nor could they,
ask possession of the property on their theory of the
case, since defendants have an interest therein as ten-
ants in common with them. They could not maintain
ejectment against their cotenants: Schnurman v. Hille-
gas, 276 Pa. 556. In Heller v. Fishman, 278 Pa. 328, 334,
we said: "Ordinarily, relief in equity is not now and
never has been available to those out of possession, claim-
ing the legal title to real estate......; but where the
jurisdiction of a chancellor is properly invoked by one
out of possession (like, for instance, the trustee-com-
plainant in Sears v. Scranton Trust Co., 228 Pa. 126,
136), and 'the question of legal title is [merely] inci-
dental and subordinate to other elements which call for
the exercise of equitable remedies, equity will take and
retain jurisdiction.'" We are of opinion plaintiffs prop-
erly sought their remedy through equity.

A further contention of appellants is that their re-
sponsive answer was not overcome by two witnesses or
by one witness and corroborating circumstances. In the
view we take of the case, the only part of the answer
pertinent to the issue is that portion averring that the
deed was delivered. Circumstances corroborative of
plaintiffs' case are found in the fact, after its execution,
that Mary M. Leahey had granted by other recorded
deeds part of the properties covered by the unrecorded
deed, that she had paid the taxes and insurance on prop-
erties mentioned in the deed up until the time of her
death, had collected the rents therefrom and continuous-
ly exercised the customary acts of ownership. The Act of
May 28, 1913, P. L. 358, which abrogated the rule as to
the effect of a responsive answer, but which also pro-
vided that nothing therein contained "shall affect or im-
pair the requirements of proof in cases where it is at-
tempted to reform or overthrow a written instrument"

does not apply to cases such as this, where the attempt is not to reform or overthrow a written instrument, but to show entirely outside of it that it was not delivered. It is true, in Cragin's Est., 274 Pa. 1, speaking through Mr. Justice KEPHART, that we said (page 5) : "The general principle of law is that the formal act of signing, sealing, and delivering is the consummation of the deed, and it lies with the grantor to prove clearly that appearances are not consistent with truth. The presumption stands against him, and the burden is on him to destroy it by clear and positive proof that there was no delivery and that it was so understood at the time." In that case, however, the grantee had manual possession of the deed and an effort was being made to circumvent this weighty circumstance. In the instant case, the deed was in the possession of the grantor and there was no fact of possession in or delivery to the grantee to be explained. In that opinion we said also (page 4) : "A deed does not become operative until delivered with the intent that it shall become effective as a conveyance. Delivery is a matter of intent to pass title. It may be accomplished by words alone, by acts, or by words and acts. But there must be something answering to one or the other of these conditions, evidencing an intent to give it effect as a deed."

In the case in hand, there were neither credible words nor acts to show that the deed had been delivered. The plaintiffs made out a prima facie case by showing the possession of the deed by the grantor. The burden was not then upon the plaintiffs to show that the deed had not been delivered, but upon the grantees to show that it had been. It would be dangerous to hold in every instance, where an executed and acknowledged deed is found in the possession of the grantor, that a presumption of delivery arises from mere execution and acknowledgment. It is undoubtedly true that there are deeds in safes or other receptacles which have been executed and

acknowledged but not delivered because the purchase had not been completed by the grantee. It would not do to hold that under such circumstances a presumption of delivery arises. Appellants' endeavor to overcome the effect of the deed being in the safe of their mother by testimony showing that others, including themselves, had access to it and had kept papers and other things of value there, falls short of showing that it was not her private safe or that the papers in it were not under her dominion. One of these papers spoken of by Francis Leahey was his obligation to pay his mother money on account of the purchase price of an automobile which she had paid for him. This was her paper, not his, as she was the obligee therein. Another paper spoken of is a bill of sale from the mother to the two other grantees in the unrecorded deed, her daughters Alma and Agnes, for the contents of a store which the mother owned. This was a document which she might naturally retain until the transaction between her daughters and herself should be completed, and this the record leaves in doubt. In Cragin's Estate, we further said (page 6) : "It is essential to the delivery that *control* of the deed should pass from the grantor, accompanied by some circumstances expressing delivery." We also said that, among the acts which, of themselves, give rise to a strong presumption of delivery, is acknowledgment "with the deed in the possession of the grantee;" and "These acts [acknowledgment, possession in the grantee, recording] assume such weight in law as to give rise to the rule governing the character of evidence necessary to dislodge the inference therefrom. To this the contrary evidence must be presented effectively." When none of these circumstances is present except the acknowledgment and when the deed is in the possession of the grantor, the rule requiring evidence to overcome the responsive answer has no bearing because the burden has been shifted by reason of the possession of the deed.

Other matters are urged upon us by appellants, but they are of no consequence in view of our determination on the main question.

The decree is affirmed at the cost of appellants.