Coxe, Trustee, *v*. Kriebel et al., Appellants, et al.

Argued May 13, 1936. Before KEPHART, C. J., SCHAF-FER, MAXEY, LINN, STERN and BARNES, JJ.

*Edward Clark Lukens,* of *Adams, Childs, McKaig & Lukens,* with him *Elmer C. Pfeiffer* and *Louis M. Childs, 2d,* for appellants.

*Desmond J. McTighe,* with him *Henry I. Fox,* of *Fox & McTighe, Joseph K. Coxe* and *William J. Ramage,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

Joseph A. Coxe, surviving trustee of an estate which held a mortgage on defendants' premises, obtained in the court below a decree declaring the mortgage a valid lien on the property and cancelling a satisfaction of the mortgage, on the ground that his deceased co-trustee had forged his signature upon the power of attorney to satisfy. The real owner of the premises and the defendant building and loan association, which holds another mortgage on the property, have appealed, urging that the evidence was insufficient to sustain the decree.

Coxe and William E. Caveny, deceased, a former member of the Philadelphia Bar, were trustees for Emma F. Aikin, life tenant under the will of Wilhelmina C. McNamee, who died in 1908. In 1921 the entire trust fund of $5,000 was invested in a mortgage upon premises of which defendant Pauline Kriebel shortly thereafter became and still remains the owner. When the mortgage was taken by the estate in 1921 Coxe examined the property and approved the loan. Thereafter the mortgage papers remained in Caveny's possession, presumably in his Philadelphia office. Coxe, a conveyancer, maintained a separate office in the same city. For many years he has been trustee of a great many other estates. From the time when the mortgage was taken he had an understanding with Caveny that the latter should receive the interest on the mortgage and make payments to the life tenant, deducting commissions and taxes. After the mortgage was taken, Coxe paid no attention to the handling of the trust, since the mortgage was the whole estate, and he merely received from time to time his share of the trustee's commissions. He had no reason to suspect that Caveny was not handling the estate in a proper manner.

On December 12, 1927, the owner, Mrs. Kriebel, desiring to refinance her property, arranged to give a new mortgage to the other appellant, Kenderton Building and Loan Association, the same amount as the old mort-

gage. Settlement was held on December 16, 1927, at the West Philadelphia Title & Trust Co. Appellants' purpose was to pay off the old mortgage, in favor of Coxe and Caveny as trustees, so that the building and loan association's mortgage would become a first lien. Mrs. Kriebel's agent attended the settlement on that day and signed the settlement sheet directing the title company to make payment by check to the order of "William E. Caveny, Attorney for Estate of W. C. McNamee," in satisfaction of the mortgage held by the trustees. Settlement was had in this manner. Caveny received the check, drawn as above stated, in the amount of $5,158.84.

Coxe had no knowledge or notice whatever of this transaction at the time it occurred. Neither Caveny nor appellants communicated with him. The proceeds of the check were appropriated by Caveny to his own use. He continued, however, to make regular payments to Mrs. Aikin, the beneficiary, of fictitious "interest on the mortgage," up to and including the payment which would have been due June 10, 1931. After receiving payment of the mortgage, Caveny, as trustee of the estate, even executed and filed personal property tax returns in Philadelphia, for the years 1929, 1930 and 1931. When remitting "interest" to the life tenant he deducted the amount of these taxes paid by him, and also commissions. He wrote a letter to Coxe on March 29, 1928, three months after the supposed refinancing of the property, enclosing a check to Coxe for commissions due him, in which nothing was said to indicate that the mortgage had been paid off. It is evident that Caveny employed every means within his power to deceive the interested parties into believing that the mortgage still existed as part of the trust estate, and had not been paid off.

On September 1, 1928, the mortgage in favor of the trustees was marked satisfied of record by the recorder of deeds in Norristown, in reliance upon a power of attorney in favor of Olive Jenkins, purporting to have been signed, sealed and delivered by both trustees on

August 30th of that year. It was duly acknowledged before a notary. This was eight or nine months after the money had actually been paid to Caveny. At that time Coxe knew nothing about the mortgage having been marked satisfied. He did not find out until, upon Caveny's death, the whole deception was revealed.

Caveny died insolvent on September 28, 1931. Through inquiries of Mrs. Aikin and her son, on October 16, 1931, Coxe was apprised for the first time of the fact that, as indicated by one of Caveny's account books, the mortgage had been paid. An entry was found on a ledger sheet noting the receipt of the money on behalf of the Aikin trust, but apparently Caveny kept no other record of the transaction, for none was found. Coxe, as surviving trustee, made a thorough investigation in an effort to bring to light the original power of attorney purporting to have been executed by Caveny and himself for the purpose of satisfying the mortgage. It could not be located among Caveny's papers, and had been withdrawn from the office of the recorder of deeds. Nobody knew anything about it, and it was not produced at the trial. After extended investigation of the whole matter, Coxe consulted his attorney, who, on October 31, 1933, made a formal demand by letter upon Mrs. Kriebel and the building and loan association, notifying them of the circumstances recited above, and demanding payment of the principal of the mortgage with interest from the receipt of the last installment by the life tenant. This was refused, whereupon plaintiff filed a bill to have the mortgage declared a valid lien upon the premises and the satisfaction of record struck off.

Plaintiff testified at length as to the circumstances of his connection with the trust estate, and of its handling by himself and Caveny. He unequivocally denied ever having executed the power of attorney to satisfy the mortgage, or having any knowledge whatever, until after Caveny's death, that the money had actually been paid to Caveny to discharge the lien. Nothing about the

transaction had been communicated to him until Mrs. Aikin came to him after the death of Caveny.

A stipulation of counsel was filed to the effect that the testimony of the notary public in Caveny's office, who had taken the acknowledgment of Coxe's signature to the power of attorney, would be of no assistance to either side of the case. Apparently she could throw no light on the chief issue in dispute, i. e., whether Coxe really executed the power of attorney.

On the basis of the facts as stated, the chancellor in the first instance found that the evidence was insufficient to impeach the acknowledgment of plaintiff's signature on the power of attorney and to establish forgery. Consequently he entered a decree *nisi* dismissing the bill. Plaintiff then filed lengthy exceptions and argued them before the court in banc. The chancellor then abandoned his first position, and made findings of fact that forgery had been proved and that plaintiff had not been guilty of laches or negligence. A decree was entered by the court in banc declaring plaintiff's mortgage a first lien on the premises, whereupon defendants filed exceptions. These were overruled by the court in banc. Defendants have appealed from the final decree in plaintiff's favor.

The chief ground urged for reversal is that the evidence of forgery was insufficient to justify the court below in setting aside as spurious the satisfaction of the mortgage. The quantum of proof required for such a finding is that it must be sufficient to sustain a jury's finding that the unlawful act was committed and that the signature on the instrument is false. In *Com. v. Mellet (No. 1)*, 196 Pa. 243, 245, 46 A. 434, the burden of proof upon a defendant denying her signature, duly acknowledged, upon a bond was declared "to at least raise a doubt, as to the genuineness of her signature, and this by competent evidence which the court would feel bound to submit to a jury." "The evidence must be sufficiently clear and explicit that a jury could rea-

sonably find it as a fact": *Burke v. Burke et al.,* 240 Pa. 379, 387, 87 A. 960. To the same effect is *Machnofsky, to use, v. Smith,* 101 Pa. Superior Ct. 578. All these cases dealt with forgeries of signatures acknowledged in proper form before a notary public or justice of the peace.

The testimony of plaintiff Coxe was positive. He absolutely denied that he had signed the power of attorney to satisfy the mortgage, or that his signature was acknowledged before the notary. His credibility on this point was attacked in cross-examination in reference to other affidavits made by him and acknowledgments taken before notaries during the course of handling this and other estates. Some of these he did not remember, but this is not significant, for he was trustee of numerous other estates over this period. In the case of the Aikin trust there were few matters of detail requiring affidavits or signatures. From 1921 on, the trust consisted solely of this one mortgage. Interest was regularly paid on it. Caveny received it, deducted small amounts for taxes and commissions, and remitted the balance to the life tenant. There was little that either trustee had to do. It is improbable that plaintiff should have executed the power, realizing at the time the significance of his act, and then have forgotten about it. On this phase of the case, the chancellor, who not only heard the evidence but spoke for the court in banc as well, said: "The defendants allege that the testimony of Mr. Coxe is weakened by the fact that he could not remember certain other affidavits until such affidavits had been shown to him. While this may be some evidence to question the credibility of Mr. Coxe, yet it may well be that a witness, particularly a witness involved in many business transactions, would be unable to recall all the papers which he had executed, but if any particular paper had been brought to his attention he would be able to say whether or not he had executed such paper."

Appellants earnestly contend, however, on the authority of *Com. v. Mellet,* supra; *Young v. Duvall,* 109 U. S. 573, and cases from other jurisdictions (see 1 American Jurisprudence 381, "Acknowledgments," section 156), that the validity of plaintiff's signature duly certified by the acknowledgment cannot be impeached by the unsupported testimony of the signer alone. The analogous rule is invoked that in equity, where it is sought to overthrow a written instrument, a responsive answer must be overcome by the testimony of two witnesses, or that of one sustained by corroborating circumstances equivalent to the testimony of another witness, which the Act of May 28, 1913, P. L. 358 (12 PS section 1222), did not abrogate. See *Thomas v. Herring,* 244 Pa. 550, 91 A. 500; *Schwebel v. Wohlsen,* 254 Pa. 281, 98 A. 864; *Leahey et al. v. Leahey et al.,* 309 Pa. 347, 163 A. 677. Admittedly at the trial of this case the only direct evidence that plaintiff never executed the power of attorney was his own testimony. There were, however, other facts and circumstances from which legitimate inferences could be drawn. The question, then, comes to this: was the circumstantial evidence of a character sufficient to corroborate Coxe's explicit denial of having ever signed the power of attorney?

We answer this in the affirmative; the corroboration was adequate to sustain the finding. If Coxe's denial is not to be rejected—and the chancellor did not so reject it—either Coxe was tricked by Caveny into signing an instrument whose significance he did not realize at the time, or Coxe's signature was forged. As we view the evidence, it points to the latter as the answer to the problem posed. If Coxe unwittingly signed the document or Caveny by some device secured his signature, the former, in his capacity as trustee, would have been guilty of negligence. It must be taken for granted that he was not negligent in this matter.

The circumstances that Caveny, admittedly an embezzler, continued to pay interest less commissions to

the life tenant for over three and a half years, as though the principal of the mortgage had not been paid; that he continued to file personal property tax returns setting forth the mortgage as an asset held by the trustees; that he wrote to Coxe over three months after the settlement and in the letter spoke of "income to date" of the estate, as though the investment still existed, whereas he knew, while Coxe did not, that the money had been converted; and the fact that he waited more than eight months before delivering the fraudulent power of attorney to the new mortgagee, all these point to Caveny rather than to Coxe as the recreant in this matter.

In considering the possibility that Coxe was tricked into signing the instrument in question, the court below said: "The chancellor felt that perhaps the signature of Mr. Coxe had been obtained in some way by Caveny to the power of attorney without Coxe's knowing that he was signing a power of attorney to satisfy the Aikin mortgage. That would seem to be an improper assumption, however, in view of the fact that we do not have the paper before us, and in view of the fact that apparently the original power of attorney was withdrawn from the recorder's office by Caveny possibly as soon as it had been recorded, and that such power of attorney was not found among the effects of Caveny. A power of attorney to satisfy a mortgage is not of value, and, under ordinary circumstances, might be allowed to remain in the recorder's office for some time. The fact that Caveny apparently recovered it as promptly as possible, and the fact that he apparently destroyed it, or at least did not place it among his records, may be some evidence at least that Caveny did not wish the purported signature of Coxe to be produced for comparison. It is a fair assumption that if the signature of Coxe was genuine even if obtained by fraud, Caveny would not have hesitated to either leave it in the recorder's office or to keep it among the papers in his files. Assuming, therefore, that we have the positive testimony of Coxe that he did not sign

such power of attorney, is such evidence corroborated by the testimony? As already indicated, the fact that Caveny failed to disclose to his co-trustee the payment to him of the mortgage principal and by paying the interest to Emma F. Aikin and commissions on income to Coxe, actually sought to conceal the fact of such payment, we must find that Caveny had a genuine interest in seeing that the name of Coxe was forged upon the power of attorney because without such forgery and the satisfaction of such mortgage the fact of Caveny's embezzlement would very likely have been brought to the attention of his co-trustee by the building association or the title company which was interested in seeing that the record was satisfied so as to give a first lien status to the building and loan association mortgage."

Beyond question, appellants' payment to Caveny alone, as attorney for the estate, was not a legal discharge of the mortgage debt unless Caveny had authority to accept payment for both. In *Vandever's Appeal,* 8 W. & S. 405, 409, the rule as to joint action of co-trustees was stated as follows: "When the administration of a trust is vested in co-trustees, they all form but one collective trustee. They must, therefore, execute the duties of the office in their joint capacity. Thus a receipt for money, or a certificate of bankruptcy, etc., must receive the joint signature of the whole body; for the power, interest and authority of co-trustees in the subject-matter of the trust being equal and undivided, they cannot like executors act separately, but all must join. . . . And this principle enters into all cases depending on the discretion and judgment of the trustees in contradistinction to acts of a mere ministerial nature. The former requires the concurrence of all the trustees; the latter may be performed by one." And in *Fesmire et al. v. Shannon et al.,* 143 Pa. 201, 209, 22 A. 898, Mr. Justice GREEN said: "When a trust or authority is delegated for mere private purposes, the concurrence of all who are entrusted with the power is requisite to its due execu-

tion . . . and distinguishes executors from trustees, who are regarded by equity as forming one collective trustee, and must therefore execute the duties of the office in their joint capacity. . . ." Caveny did, and doubtless had authority to, accept recurring interest payments, and Coxe testified that this was pursuant to an understanding between them as co-trustees. There was no evidence, however, that Caveny had been clothed by Coxe with any authority to receive *payment of the principal,* nor any circumstances from which a general authority could be inferred. The fact that Caveny apparently kept the mortgage papers in his possession was insufficient to justify appellants in paying him the money without authorization by Coxe. As Mr. Justice SCHAFFER said, in *Browne et al. v. Hoekstra,* 279 Pa. 418, 421, 123 A. 861: "Creating one an agent to receive payment of the interest due on a mortgage does not make him an agent to receive payment of the principal. 'The fact that an agent is authorized to receive installments of interest as they become due on a note or other obligation does not give him implied power to collect the principal': 2 Corpus Juris 621."

Appellants did not consult Coxe as to Caveny's authority, which they could easily have done. This was appellants' error; it was not Coxe's; he knew nothing about this payment. Yet appellants must be held to have known that the mortgage stood of record in the names of *both* trustees. This was plainly stated on the settlement certificate of the title company, offered in evidence. In *Browne v. Hoekstra,* supra, this court "admonished those who deal with agents claiming to be authorized to receive the principal of mortgages, that the mere possession of the mortgage papers is not sufficient to establish agency." "A mortgagor before making payment to a pretended agent should ascertain the latter's authority by inquiry of the mortgagee or by the production of a power of attorney from him": *Lewis v. Matias et ux.,* 300 Pa. 238, 241, 150 A. 636. Our latest cases on

the point are *Judith v. Dicola et ux.*, 317 Pa. 353, 176 A. 238, and *Brientnall v. Peters*, 317 Pa. 356, 176 A. 240. Clearly appellants, both Mrs. Kriebel and the building and loan association, were negligent in authorizing payment to be made to Caveny alone, as attorney for the estate. Had the check been drawn to both trustees, appellants would have been entirely protected, and the same would be true if they had taken the trouble to obtain proper authorization by Coxe for payment to be made in the way it was. "As to the equities of the case, there is nothing in the position of appellants which commends itself to us," as Chief Justice FRAZER said in a case involving not dissimilar facts: *Central Trust & Savings Co. et al. v. Walters et ux.*, 314 Pa. 418, 422, 171 A. 890.

On the other hand, whether or not Coxe was negligent in the performance of duty as trustee, he was not guilty of laches in pursuing his claim against appellants. There were no circumstances to put him on notice of Caveny's mismanagement of the trust. It consisted of a single mortgage on which, to all appearances, interest was regularly being paid until Caveny's death. The latter took care that no complaint should emanate from the life tenant. Coxe's duty was only to use reasonable care to prevent his co-trustee from committing a breach of trust: A. L. I., Restatement of the Law of Trusts, section 184; *Adams's Estate*, 221 Pa. 77, 70 A. 436; *Fesmire's Estate*, 134 Pa. 67, 19 A. 502; but this was a duty owed his *cestui que trust*, not appellants. Against them he possessed a legal right, which to be of value had to be exercised with reasonable diligence. "Equity will not lend its aid to enforce a trust where the interested party has delayed for a long time to enforce a right when he had or could have had knowledge of a breach or continued breach adverse to such right or interest": *Stone v. New Schiller B. & L. Assn. et al.*, 310 Pa. 196, 199, 165 A. 12.

A trustee who has confidence in the integrity of his associate, would not ordinarily make periodical trips to the recorder's office to ascertain whether a mortgage held by the trust estate had been satisfied. Nor should he be legally required to do this, or to make inquiries of the mortgagor, or examine the private books of his co-fiduciary, on pain of being denied the right to repudiate the latter's breach of trust.

After discovering the wrong, on Caveny's death, Coxe made a series of investigations, seeking to discover the important but missing document in the case, to wit: the forged power of attorney. Caveny was insolvent, his papers in confusion, his avowed assets largely fictitious. Records had to be examined, individuals interviewed, and legal rights clarified, before a formal demand upon appellants could be made. This demand was not made for two years, but under the circumstances we agree with the court below that plaintiff was not barred by laches. Furthermore, there is an express finding by the court below that appellants' position with respect to the mortgaged property remained unchanged from the date of the settlement with Caveny to that of plaintiff's demand. Being unaffected by the delay, they cannot successfully urge that the delay bars plaintiff's right: *Quinn v. American Spiral Spring & Mfg. Co.*, 293 Pa. 152, 160, 141 A. 855.

The case is unfortunate for all of the parties to this record, for none of them can be charged with wrongdoing. The real wrongdoer is beyond the reach of process. However, it was appellants' failure to take care that the mortgage money properly reached both trustees, and not any neglect of duty on the part of plaintiff that enabled the wrong to be committed. On them, therefore, the loss must fall: *Browne et al. v. Hoekstra*, supra; *Mikos v. Kida et al.*, 314 Pa. 561, 564, 172 A. 101.

Decree affirmed, at appellants' cost.