IN THE MATTER OF THE ACCOUNTING OF THE EXECU-
TORS OF ISRAEL KORETZKY, DECEASED.

JACK M. KORETZKY, SOMETIMES KNOWN AS JACOB
KORETZKY, PLAINTIFF-RESPONDENT AND CROSS-
APPELLANT, v. JULIUS I. KISLAK, ISAAC GROSS AND
LOUIS KADISON, DEFENDANTS-APPELLANTS AND
CROSS-RESPONDENTS, AND LILLIAN HORTON, DE-
FENDANT-RESPONDENT AND CROSS-APPELLANT, AND
ANNE BARASH, DEFENDANT, AND JEANETTE POLLAK,
DEFENDANT-RESPONDENT.

Argued November 5, 1951—Decided December 10, 1951.

508 

510

*Mr. Samuel Kaufman* argued the cause for the appellants and for the plaintiff-respondent and defendants-respondents, Jack M. Koretzky, Lillian Horton and Jeanette Pollak, and for the cross-appellants, Jack M. Koretzky and Lillian Horton (*Mr. Sanford Freedman,* of counsel; *Messrs. Bilder, Bilder & Kaufman,* attorneys).

*Mr. Benjamin Gross* argued the cause with respect to the accounting for the respondents, Isaac Gross, Julius I. Kislak and Louis Kadison, executors of the estate of Israel Koretzky, deceased (*Mr. Bernard A. Green,* of counsel; *Messrs. Gross & Gross,* attorneys).

*Mr. Thomas McNulty* argued the cause with respect to the removal of the executors, &c., for defendants-appellants and cross-respondents, Julius I. Kislak, Isaac Gross and Louis

Kadison (*Mr. John Milton*, of counsel; *Messrs. Milton, Mc-Nulty & Augelli*, attorneys; *Messrs. Platoff & Platoff*, attorneys for defendant-appellant and cross-respondent, Julius I. Kislak; *Messrs. Carpenter, Gilmour & Dwyer*, attorneys for defendant-appellant and cross-respondent, Louis Kadison).

The opinion of the court was delivered by

BURLING, J. There are three appeals in connection with matters relative to the estate of Israel Koretzky, deceased, presently before this court for determination. The first of these is an appeal by Jacob (Jack M.) Koretzky, Lillian Horton and Jeanette Pollak from a decree allowing the account entered on July 13, 1948, in the former Prerogative Court in the matter of an accounting of the executors of Israel Koretzky, deceased, and it was directed to the former Court of Errors and Appeals. Prior to hearing there the appeal was transferred to this court by virtue of the New Jersey Constitution of 1947, *Art. XI, Sec. IV, par.* 8, *clause (a)*. Consideration of the appeal was adjourned pending determination of the court below in the corollary matters. The reason for this will be apparent from the recitation of facts hereinafter set forth. The other two appeals were addressed to the Appellate Division of the Superior Court from a judgment of the Chancery Division of the Superior Court entered April 3, 1951, in a suit brought for removal of the executors of Israel Koretzky, deceased, and other relief incidental thereto (one of the corollary matters above mentioned); Jacob Koretzky (Jack M. Koretzky), plaintiff, and Lillian Horton, defendant, joining in the prayers of the complaint, appealed from portions of the judgment adverse to their interests, and the executors-defendants, Julius I. Kislak, Isaac Gross and Louis Kadison, appealed from other portions of the judgment. Certification of these two appeals was granted by us upon petition and cross-petition therefor, prior to hearing in the Appellate Division in order to permit at one and the same time our consideration of the interrelated questions involved in these several proceedings.

To enable one to dispel the mist of confusion blanketing the questions involved in these appeals resulting from the multiplicity of suits and to indicate the relative positions of the parties, we deem it necessary to chart the course of the litigation in detail.

Israel Koretzky, whose labors produced the material things subjected to this long series of litigations, departed this life on January 7, 1946. He died testate and his will dated April 30, 1941, was admitted to probate in the former Prerogative Court of this State on February 6, 1946; letters testamentary were granted to Julius I. Kislak, Isaac Gross and Louis Kadison, executors, who had been nominated in the will. The decedent had nurtured to success a substantial business which by virtue of ownership of a considerable majority of outstanding shares of stock, he had controlled through the media of two New Jersey corporations, the Bright Star Battery Company and the Bright Star Warehouse Company. His ownership in the Warehouse Company (10 shares of stock) was the entire issued capital stock, and in the Battery Company was 30,600 shares out of 39,000 shares. The testator provided in his will, *inter alia*:

"2. All the rest, residue and remainder of my estate, real, personal and mixed, and wherever the same may be situated, I do hereby devise, give and bequeath unto my friends, Isaac Gross, Julius I. Kislak and Louis Kadison to have and to hold the same, however, in trust upon the following trusts, terms and conditions:

(a) All cash on hand or in banks, as well as moneys owing to me by Bright Star Battery Company, Bright Star Warehouse Company and also moneys owing to me by any other person, firm or corporation, whether evidenced by promissory note or other writing, as well as any stock, bonds or securities issued by any other than Bright Star Battery Company or Bright Star Warehouse Company, as well as the proceeds of any policy or policies of life insurance on my life, which may at the time of my decease be payable to my estate, and all income interest, dividends and accumulations on any of the items in this subdivision mentioned, shall be held in trust for my beloved son, Jacob Koretzky, but nevertheless, subject to the provisions hereinabove set forth.

(b) Of my stockholdings in Bright Star Battery Company, a New Jersey corporation, my said trustees shall hold twenty thousand (20,000) shares, together with all dividends and income therefrom,

514 

for the benefit of my said son Jacob Koretzky, but also subject to the provisions hereinafter set forth.

(c) Of my stockholdings in Bright Star Warehouse Company, a New Jersey corporation, my said trustees shall hold six (6) shares, together with all dividends and income therefrom, for the benefit of my said son Jacob Koretzky, but also subject to the provisions hereinafter set forth.

(d) My said trustees are hereby vested with absolute discretion in their sole and exclusive judgment to apply and pay over such part of the accumulations, income, interest or dividends or capital for the benefit of my said son Jacob Koretzky, as to them may seem necessary or proper, for his maintenance, support or education, or for the support, maintenance or education of his wife and child or children, should he have any, until my said son shall become of the age of forty (40) years; whereupon my said trustees may turn over to him, my said son, all of the trust fund hereby provided for him, with all accumulations thereon. Should my son die before attaining the age of forty (40) years, leaving him surviving a child or children, then I direct my trustees to hold all of the then remaining portion of my estate, so provided for the benefit of my son, for the like benefit of such child or children of my said son, who shall survive him, in equal shares, to be delivered with all accumulations thereon, when the youngest of my said son's children shall have attained the age of twenty one years; but until the time for such ultimate distribution shall arrive, to provide such reasonable support, maintenance and education of my son's child or children, out of the same as in the discretion of my trustees shall seem proper.

(e) That of the remaining of my stockholdings in the Bright Star Battery Company and Bright Star Warehouse Company, both New Jersey corporations, whether standing in my name or in the name of another, but in which I own the equitable interest, I do give and bequeath unto my daughters Anne Barash, Lillian Horton and Jeanette Pollak, in equal shares. My said trustees shall hold the shares bequeathed to my said daughters under this subdivision with all accumulations and dividends thereon, and from time to time apply the income or dividends therefrom toward the support and maintenance of my said daughters, each out of her respective share, and shall turn over to each of my daughters the share to which she is entitled, together with any accumulations accrued thereon, upon her attaining the age of forty (40) years. Should any of my daughters die before having attained the age of forty (40) years, leaving her surviving a child or children, then I direct my trustees to hold all of the then remaining portion of my estate, as provided for the benefit of my said daughters respectively for the like benefit of such child or children of said respective daughters, who shall survive her, in equal shares, to be delivered with all accumulations thereon, when the youngest child of such daughter shall have attained the age of twenty one (21) years; but until the time for such ultimate distribution shall

arrive, to provide such reasonable support, maintenance and education of the child or children of such daughter, out of the same as in the discretion of my trustees shall seem proper."

In his will, he designated and appointed Kislak, Isaac Gross and Kadison as executors and trustees, authorized and directed payment of his just debts and funeral expenses, authorized his executors and trustees to sell any part of his estate, *except* his stockholdings in the Bright Star Battery Company and the Bright Star Warehouse Company, and directed them to invest and reinvest the proceeds in bonds or obligations of the United States of America. He provided that if any of his executors and trustees should die pending the administration of the trusts, the survivors or survivor should "continue as sole trustees or trustee with like force and effect as if all three of said trustees had continued and acted accordingly."

The suit initiated first in point of time, was instituted by the executors on May 19, 1947, against Lillian Horton, Meyer B. Horton, Anne Barash, Abraham I. Barash, Jeanette Pollak, Jacob (Jack M.) Koretzky and the Bright Star Warehouse Company to determine the ownership of 24 shares of stock of said Warehouse Company, the executors charging the defendants with fraud in the issuance of four certificates for six shares each, to Lillian Horton, Anne Barash, Jeanette Pollak and Jacob (Jack M.) Koretzky respectively. This action was filed in the former Court of Chancery and was later transferred to the Chancery Division of the Superior Court.

The second action in point of time was a suit by Jacob (Jack M.) Koretzky, instituted by amended bill of complaint filed in the former Court of Chancery on January 13, 1948, against Julius Kislak, Isaac Gross, Louis Kadison, Lillian Horton, Jeanette Pollak and Anne Barash, for construction of the will of Israel Koretzky, deceased, for cancellation of a consent signed by the complainant to a payment of $25,000 made by the Bright Star Battery Company to Abraham I. Barash, for a decree enjoining and restraining the defendants

Kislak, Gross and Kadison and each of them from acting as executors of the estate of Israel Koretzky, deceased, for a decree enjoining and restraining the defendants Kislak, Gross and Kadison and each of them from qualifying as trustees under the will of Israel Koretzky, deceased, and for such other and further relief as to the court might seem equitable and just in the premises. Defendants Jeanette Pollak and Lillian Horton by their answers admitted the allegations of the said amended bill of complaint and joined in the prayers for relief therein contained; the other defendants answered contesting the suit. This action also was later transferred to the Chancery Division of the Superior Court.

The third proceeding stems from an intermediate account filed by the executors of Israel Koretzky, deceased, in April, 1948, in the former Prerogative Court. Exceptions having been filed by Jacob (Jack M.) Koretzky, Jeanette Pollak and Lillian Horton, an order of reference was made on May 18, 1948, to a master of that court to hear the matter of the exceptions to the account and report to the court. Four exceptions had been taken, but two of these were waived at the hearing before the master. One of the remaining exceptions related to inclusion in the account as an asset of the estate ten shares of capital stock of the Bright Star Warehouse Company which the exceptants claimed was not properly included among the assets of the estate until ownership thereof was determined in the warehouse stock suit in Chancery, *ante*. The remaining exception was to the effect that approval of the account should be withheld pending the outcome of the injunction or removal suit (against the executors) in Chancery, *ante*. The master filed his report, dated June 18, 1948, advising dismissal of both of these exceptions. On July 13, 1948, the former Prerogative Court ordered, adjudged and decreed that the master's report be confirmed and that the account be allowed, except as to the matters alleged in the exception with reference to the ten shares of the Bright Star Warehouse Company stock which the court decreed should be reserved until disposition of the Chancery suit

concerning such stock (to be accounted for by the executors in any further accounting), and allowing the executors five per cent commission on the *corpus* of the estate (less the value of the ten shares of stock of the Warehouse Company), allowing the executors five per cent commission on income, and allowing a $40,000 counsel fee to Gross & Gross, proctors for the executors-accountants. The exceptants Jacob (Jack M.) Koretzky, Lillian Horton and Jeanette Pollak appealed from such parts of the aforesaid decree as confirmed the master's report, as allowed *corpus* and income commissions and as allowed the proctors' fee. The appeal was addressed to the former Court of Errors and Appeals and, as hereinbefore stated, prior to hearing there was transferred to this court and has been held pending the outcome of the other two suits (*ante*) which at the time of the entry of the decree appealed from were pending in the former Court of Chancery.

This was not all. The executors also filed in the former Court of Chancery a bill of complaint for instructions, seeking authority to sell all the estate's stockholdings in the Bright Star Warehouse Company and in the Bright Star Battery Company, and later filed in the Chancery Division of the Superior Court a petition for instructions as to whether they should be required to retain an attorney other than the proctors of the estate to handle pending federal estate tax matters (as requested by Anne Barash, one of the beneficiaries of the estate) and for instructions as to their proper course of conduct with reference to a street improvement proposed to be effected by the City of Clifton which would affect the property of the aforesaid Warehouse Company. Pretrial conference, by order of the Chancery Division of the Superior Court, dated April 19, 1949, on these matters, was adjourned and continued until the disposition and determination of the warehouse stock and injunction or removal suits, *ante*. These proceedings are therefore not before us for determination but reference thereto is made for the purpose of indicating the entire situation existing between the various parties to these appeals.

This case is an example of the effect of lack of teamwork among all concerned for their mutual interests and welfare, when the gamut of jealousies and selfishness are running riot and forecast destruction of the fruits and hopes of an industrious ancestor, a man of initiative who developed and fostered a successful business, as may be done through the opportunities afforded in the American way of private enterprise.

We now move to the course of the litigation of the warehouse stock and injunction or removal suits, *ante*. Although these actions were tried consecutively they were not technically consolidated. Pretrial conferences held on the same day resulted in pretrial orders entered in the Chancery Division of the Superior Court on November 1, 1948, in both suits. In the injunction or removal suit the pretrial order raised merely a factual issue, namely, whether the proofs to be adduced at the trial would warrant the relief prayed. In the warehouse stock suit trial was limited by the pretrial order to four issues: whether Israel Koretzky at the time of his death was the owner of all the issued stock of the Bright Star Warehouse Company; whether prior to his death he transferred ownership of said shares to defendants Jacob (Jack M.) Koretzky, Anne Barash, Lillian Horton and Jeanette Pollak; whether cancellation of the certificate of stock (for ten shares) owned by Israel Koretzky was fraudulent; and whether the four certificates of stock for six shares each in the names of the defendants Jacob (Jack M.) Koretzky, Anne Barash, Lillian Horton and Jeanette Pollak were validly or fraudulently issued. The trial of the warehouse stock case resulted in a judgment of the Chancery Division entered April 3, 1951, determining that the said four certificates for six shares each were fraudulently issued and should be surrendered for cancellation, directing the above named defendants to surrender said certificates for cancellation, and directing the defendant Bright Star Warehouse Company to issue a certificate for ten shares in the name of Israel Koretzky. There was no appeal from this judgment. However, it was

stipulated in the injunction-removal suit that the relevant portions of the testimony in this warehouse stock suit should be considered by the court as if the witnesses had been interrogated and cross-examined in the injunction or removal suit.

At the trial of the injunction or removal suit, counsel for the plaintiff Jacob (Jack M.) Koretzky advised the court that the original bill of complaint had sought removal of the executors but had been amended to merely ask for restraint (see recital of prayers of the amended complaint, *ante*) due to alleged lack of jurisdiction in the former Court of Chancery to grant the relief of removal. See *Leddel's Executor v. Starr*, 19 *N. J. Eq.* 159, 163 (*Ch.* 1868). The trial court was advised that plaintiff would move at the conclusion of his case to restore that prayer for relief in view of the merger in the Chancery Division of the Superior Court of the jurisdiction of the former Court of Chancery and the former Prerogative Court effected by the Constitution of 1947. The testimony was closed without further motion by the plaintiff in this respect, but the trial court appears to have treated the foregoing remarks of counsel as a motion to amend the complaint and to have granted the same for paragraph 2 of the judgment rendered in the cause denies the application for removal of the executors. No objection to this informal treatment of the pleadings was or is raised by the executors-defendants or any other party. The trial of this action resulted in judgment entered on April 3, 1951, as follows:

"1. That the consent signed by Jacob M. Koretzky authorizing the payment by Bright Star Battery Company of $25,000 to Abraham I. Barash be and the same is hereby cancelled and declared void as to Jacob M. Koretzky;

2. That the application to remove Julius I. Kislak, Isaac Gross and Louis Kadison as executors of the estate be and the same hereby is denied;

3. That Isaac Gross, Louis Kadison and Julius I. Kislak be and they hereby are enjoined from qualifying as trustees under the last will and testament of Israel Koretzky, deceased;

4. That Walter T. Margetts be and he is hereby appointed as trustee under the last will and testament of Israel Koretzky, de-

ceased, in the place and stead of Isaac Gross, Julius I. Kislak and Louis Kadison, upon the filing of a surety company bond in the sum of $10,000 to be approved by the court, for the faithful performance of his duties as trustee;

5. That Isaac Gross, Julius I. Kislak and Louis Kadison assign and deliver to the trustee all of the shares of stock owned by the decedent in Bright Star Battery Company and Bright Star Warehouse Company;

6. That the full power to vote said stock at all meetings of the respective corporations be and the same is hereby vested exclusively in said trustee;

7. That the executors be and they are hereby enjoined from interfering in any manner with the operations and management of the aforesaid corporations;

8. That Isaac Gross, Julius Kislak and Louis Kadison, executors, be and they are hereby directed forthwith to resign as officers or directors of the said Bright Star Battery Company and the Bright Star Warehouse Company as the case may be;

9. That the management and operations of said corporations are hereby vested exclusively in the trustee;

10. That any of the parties to this action may apply to the court at the foot of this judgment for such other and further relief as may be just and proper in the premises; and

11. That no counsel fees be allowed in this proceeding to counsel for any of the parties plaintiff or defendant, on the ground that the court is without power to award fees, there being no fund in court;

12. That pending the determination of any appeal taken from this judgment to any State Court of competent jurisdiction, all proceedings hereunder be stayed."

The plaintiff Jacob (Jack M.) Koretzky and the joining defendant Lillian Horton appealed from paragraphs 2 and 11 of the aforesaid judgment and defendants, Kislak, Gross and Kadison filed a cross-appeal from paragraph 1 and paragraphs 3 through 10, inclusive, of the aforesaid judgment. Joining defendant Jeanette Pollak and contesting defendant Anne Barash did not appeal. As heretofore stated, the two appeals in this matter, although addressed to the Appellate Division of the Superior Court, prior to hearing there were certified to this court upon petition and cross-petition for consideration in conjunction with the appeal from the decree of the former Prerogative Court in the accounting proceedings, *ante*.

### KORETZKY v. KISLAK

We first consider the appeals in the removal suit inasmuch as the question of the executors' exercise of the functions of their fiduciary office is the matter of the greatest importance.

*I — Removal.*

We resolve the primary issue on the appeals in the injunction-removal suit, whether the executors should be removed, against the executors-defendants, for the reasons hereinafter stated.

The authority of the court to remove executors under the circumstances exhibited in this case stems in part from *R. S.* 3:12–4 which authorized the (former) Prerogative Court, when letters were issued by the ordinary, *inter alia*:

"c. Upon complaint of an interested person, presented on such notice, served personally or by mail, as the court may direct, requiring the fiduciary to show cause on a day therein fixed, why he should not be removed and why his letters or appointment should not be revoked, it appears that—

1. The fiduciary has embezzled, wasted or misapplied any part of the estate committed to his custody, or has abused the trust and confidence reposed in him;

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

4. One of two or more fiduciaries has neglected or refused to perform his duties or to join with the other fiduciary or fiduciaries in the administration of the estate committed to their care whereby the proper administration and settlement thereof is or may be hindered or prevented."

We do not have presented to us on these appeals and do not consider, whether the former Court of Chancery could have entertained an action for removal of executors under its inherent equity powers upon the facts of this case. It is sufficient that the power vested in the former Prerogative Court by the above statute was vested in and may be exercised by the Chancery Division of the Superior Court pursuant to the provisions contained in *N. J. Const.* (1947), *Art. VI, Sec. III, par.* 2 (giving the Superior Court original jurisdiction in all causes), *Art. XI, Sec. IV, par.* 3 (abolishing the

Prerogative Court and transferring its jurisdiction to this court and the Superior Court according as jurisdiction is vested in these courts under the Constitution), *par.* 8(*d*) (transferring causes pending in the Prerogative Court to the Chancery Division of the Superior Court), and *par.* 8(*e*) (transferring cases and proceedings in the Court of Chancery to the Superior Court), and *par.* 10 (transferring the jurisdiction and powers of the chancellor and the ordinary to the judges of the Superior Court), and *Art. XI, Sec. I, par.* 3 (continuing in full force all statutory and other law in force at the time of the adoption of the Constitution until suspended, altered or repealed by the Constitution or otherwise), as implemented and supplemented by *Rule* 3 :101–3 (where letters testamentary have been issued by the Prerogative Court, other actions or proceedings with relation to the estate shall be brought in the Superior Court) and *Rule* 3 :40–2 (actions which prior to September 15, 1948, were maintainable in the Court of Chancery or before the Chancellor, or in the Prerogative Court or before the Ordinary, shall be brought in the Chancery Division of the Superior Court).

The dereliction of duty of each of the executors in the case *sub judice* comes within both clause 1 (abuse of trust and confidence) and clause 4 (neglect or refusal to perform duties or to join with the other fiduciaries in the administration of the estate committed to their care whereby the *proper* administration of the estate is or *may be* hindered or prevented) of *par. c* of *R. S.* 3 :12–4, *supra*. The executors were involved, as will be demonstrated, in conduct which jeopardized the financial security of the estate while debts and estate taxes in considerable amount (up to $157,000 due to the United States alone, carrying an interest load of approximately $8,800 per year, a total unpaid interest burden of $25,000 at the time of the trial) were outstanding, while the executors had on hand in the estate some $110,000. This conduct was indulged in while the major asset of the estate, the stockholdings in the Bright Star Battery Company, were

being threatened by the weakening of the stability or productive capacity of that corporation, indicated by a rapid decrease of gross profits ($580,000 in 1946; $414,000 in 1947; and $110,000 in 1948) and a similar decline in net profits ($278,854 in 1946; $256,551 in 1947; $67,784 in 1948).

### a. The payment to Abraham I. Barash.

An incident of the executors' neglect of duty was their approval of a gift of $25,000 to Abraham I. Barash, son-in-law of the testator and officer and director of the Bright Star Battery Company.

The will of Israel Koretzky, deceased, provides for payment of debts and collection of accounts receivable. It nowhere indicates any intention to give testator's son-in-law Barash $25,000 either from his personal estate or through either the Battery Company or the Warehouse Company. Isaac Gross indicated on the stand that the payment was "salve" to Barash; Kislak testified he "didn't think it was necessary" to investigate the payment, nor the charge of improper entries in connection therewith on the books of the Battery Company because it made "very little difference" to the estate; that he didn't know whether it affected the beneficiaries, didn't ask the estate's attorney for a legal opinion, didn't discuss with his co-executors whether there was an obligation to pay the sum, but thought it was a proper payment to Barash, and yet he testified that the executors were all in agreement that the estate should reimburse the Battery Company for the payment although this actually made the payment a charge against the beneficiaries under the testator's will. Kadison testified he relied on testator's alleged statement to him (Kadison) that testator wanted to make a gift to Barash for past services to testator personally and to the company. He further testified that he and his co-executors knew the book entries were not made in November, 1945, (as shown on the books) but in January, 1946, after testator's death and dated back "to reflect Mr. Koretzky's instructions during his life-

time," although there was no writing to support it. The false entries were made upon Kadison's orders; he testified that he discussed this with Gross although not with Kislak. The payment to Barash was authorized although Barash owed the Battery Company $11,000 and although Barash in that year (1946) drew a $25,000 salary and an $8,000 bonus. Isaac Gross testified that he gave no consideration to the question whether the $25,000 proposed gift to Barash was a binding obligation on the estate or the company, nor whether the gift was revoked by testator's death. He "knew" payment was to be made when an insurance check (for fire losses) came in and that Barash did not have the money and the gift was not completed before testator's death. Benjamin Gross (Isaac's brother), attorney for the estate, testified that he was told by Kadison that the entries were made after testator's death and the executors knew it; that Kadison told him they were made "sometime subsequent" to the date they bore.

The least condemnation of the conduct of the three executors under the above recited facts is that they did not exercise that degree of care, prudence, circumspection and foresight that an ordinary prudent person would employ in like matters of his own. *Milberg v. Seaboard Trust Co.,* 7 *N. J.* 236, 244 (1951); *Blauvelt v. Citizens Trust Co.,* 3 *N. J.* 545, 554 (1950). The three executors all had the duty to participate in the administration of the estate and each had the duty to use reasonable care to prevent the others from committing a breach of trust. 2 *Scott on Trusts, sec.* 184, *p.* 972; *Coxe v. Kriebel,* 323 *Pa.* 157, 185 *A.* 770, (*Pa. Sup. Ct.* 1936), also refer to Annotations found in 106 *A. L. R.,* at *p.* 111; *Restatement, Trusts, sec.* 184. Compare *Duncan v. Davidson,* 40 *N. J. Eq.* 535 (*Prerog.* 1884). Kislak not only was indifferent to the legality of the payment to Barash and its effect on the estate but expressed his willingness as executor to reimburse the corporation from the estate—even after he was put on notice of the falsification of the entries on the corporation books; Kadison participated by ordering

the falsification, and Gross participated by abetting it; thus none of the three performed their duty of considering it together as executors nor used reasonable care to prevent commission of a breach of trust. It has been stated that "* * * a trustee cannot make a gift of property in his care unless the gift is authorized by the instrument appointing him * * *." 6 *N. J. Practice (Clapp, Wills and Administration)*, sec. 499, p. 440; *In re Ebert,* 136 *N. J. Eq.* 123, 127 (*Prerog.* 1945). Compare *Prudden v. Lindsley,* 29 *N. J. Eq.* 615, 616 (*E. & A.* 1878) and *Paret v. Bayonne,* 40 *N. J. L.* 333, 336 (*E. & A.* 1878). It is no more proper to make the gift by the subterfuge of creating a debt of the testator (after his death) in a corporation in which the estate holds the controlling stock interest and then paying that "debt" from the funds of the estate, than it is to make the gift directly from the assets of the estate.

### b. Duty in corporate affairs.

The executors, and each of them, failed to perform the duty incumbent upon them as fiduciaries to exercise that supervision and control which the stockholdings of the estate gave them over the Bright Star Battery Company. They had the power of election of sufficient directors of that corporation to assure proper management for the maintenance of stability and productivity of the corporation for the benefit of all its stockholders including the estate. The estate's primary asset consisted of the controlling interest (79.2%) of the outstanding stock in this corporation. At various times during the period in controversy each of the executors was a member of the board of directors; both Kadison and Gross were directors at the time the corporation made the foregoing gift to Barash.

In addition to that matter, there were various other incidents which show neglect or avoidance of duty on the part of the executors with respect to the estate and as well to all other stockholders of the corporation.

Rather than make the corporation productive (and thus make the assets of the estate productive) : the executors made no effort to investigate officers' compensation although the corporation's income was declining; they appear to have permitted rentals paid by Battery to Warehouse to jump from $27,000 per year before testator's death to $39,000 per year in 1946 or 1947; they authorized increased salaries and bonuses, or failed to exercise their duty of control in this respect; the executors allowed the corporation to make large contributions to charity in 1946, 1947, 1948 (including a total of $28,000 to a single charity). Kislak testified that he approved the bonuses (to Barash, Horton and Pollak) and that the executors didn't want to "butt into corporate affairs" although they wanted to know what was going on. Kadison testified all three wanted Barash to be president of the Battery Company and Kislak testified that he approved of the election of Horton and Barash to the board of directors of the Battery Company in April, 1946, although he knew on March 27, 1946, that they had signed the fraudulently issued certificates of stock of the Warehouse Company, and that he approved of Pollak's election although he participated in the fraud. All the executors testified they knew this fraud had been perpetrated and that Barash, Horton and Pollack were involved therein, at the time Barash, Horton and Pollack were elected by the executors (voting the stock of the estate) to the board of directors of the Battery Company on April 2, 1946.

In voting shares of stock fiduciaries are under a duty to vote in such a way as to promote the interests of the beneficiaries. 2 *Scott on Trusts, sec.* 193.1, *p.* 1047. See also 6 *N. J. Practice, Wills & Administration, sec.* 571, *p.* 579; *R. S.* 14:10–7 as amended by *L.* 1946, *c.* 61 (*N. J. S. A.* 14:10–7) ; *Clowes v. Miller,* 60 *N. J. Eq.* 179, 185 (*Ch.* 1900) ; and *Fawcett v. Cooper Hospital,* 131 *N. J. Eq.* 181, 185 (*E. & A.* 1942). And where a fiduciary holds sufficient shares to control actually or substantially the conduct of the corporation he is under a duty to exercise that control for

the benefit of the trust. 2 *Scott on Trusts, sec.* 193.2, *pp.* 1049, 1050. See *Latorraca v. Latorraca,* 132 *N. J. Eq.* 40 (*Ch.* 1942) affirmed 133 *N. J. Eq.* 298 (*E. & A.* 1942); *Murray v. Beattie Mfg. Co.,* 79 *N. J. Eq.* 322, 336 (*Ch.* 1911) reversed on other grounds, 79 *N. J. Eq.* 604 (*E. & A.* 1912); *Lister v. Weeks,* 60 *N. J. Eq.* 215 (*Ch.* 1900), affirmed 61 *N. J. Eq.* 675 (*E. & A.* 1900); and 6 *N. J. Practice, Wills & Administration, sec.* 571, *p.* 580.

Certainly it cannot be said that it was the exercise of good business judgment for these executors as representatives of the predominant stockholder (the estate) to elect as directors men known by them to have been involved in a recent stock fraud, nor may it be said with good conscience that it was the proper exercise of their *fiduciary* duty to this decedent's estate for the executors to vote into control of the affairs of the corporation which constituted their estate's primary asset men who were known to the executors already to have participated in a stock fraud which if successful would have deprived the estate of a substantial asset. Thus, aside from their actions from time to time in their capacity as directors of the corporation, such as voting bonuses to these same perpetrators of fraud against the estate and voting of substantial charitable contributions, while the corporation was suffering a noticeable decline in profits, these executors clearly abused the trust and confidence reposed in them by the testator and neglected or actively breached their duty to the estate and the beneficiaries thereof.

### c. Conflict of interest.

The evidence shows that Kadison obtained an additional $5,000 payment for services from the company after testator's death in addition to his $18,000 salary and Kislak knew this; that Kadison billed the company for $10,400 extra for 1945 and after testator's death billed for an additional $5,000 and received payment after submission of the bill to the board of which he was a member, although there was no prior

agreèment therefor; that Isaac Gross and Kadison were both voted additional amounts ($1,500 and $2,000 respectively) in 1946 for services to the corporation and Kadison's monthly compensation was increased from $700 to $1,200; and that Kislak's insurance agency received $30,000, compensation (net profit of $16,500) on working out the fire loss.

The fact that a trustee's interest conflicts with his duty to the beneficiaries has been considered ground for his removal, even where the loss is occasioned by his violation of his duty as a director or officer of the corporation in which the trust owns shares. 2 *Scott on Trusts, sec.* 170.22, *pp.* 904, 905. A trustee who without fault finds himself in a position where his interest conflicts with that of the beneficiaries has been held required to resign the trust. 2 *Scott on Trusts, sec.* 170.23, *p.* 907; *Hill v. Hill,* 79 *N. J. Eq.* 521 (*Prerog.* 1912). See also *Fidelity Union Trust Co. v. Guaranty Trust Co.,* 140 *N. J. Eq.* 548 (*E. & A.* 1947). Compare *Bankers Trust Co. v. Bacot,* 6 *N. J.* 426, 436, 437 (1951).

Generally a trustee is not entitled to receive a profit from the administration of the trust other than compensation for his services. 2 *Scott on Trusts, sec.* 170.22, *pp.* 902, 903; *Purchase v. Atlantic S. D. & T. Co.,* 81 *N. J. Eq.* 344 (*Ch.* 1913), affirmed 83 *N. J. Eq.* 353 (*E. & A.* 1914). Also 6 *N. J. Practice, Wills & Administration, sec.* 499, *p.* 437; *Ellicott v. Chamberlin,* 38 *N. J. Eq.* 604 (*E. & A.* 1884); *Loudenslager v. Woodbury Heights Land Co.,* 58 *N. J. Eq.* 556 (*E. & A.* 1899); *Hill v. Hill, supra; Dufford v. Nowakoski,* 125 *N. J. Eq.* 262 (*E. & A.* 1939), affirmed on re-argument 126 *N. J. Eq.* 529 (*E. & A.* 1939); *Rothenberg v. Franklin Washington Trust Co.,* 133 *N. J. Eq.* 261 (*E. & A.* 1943).

The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty and he is not permitted to place himself in a position where it would be for his own benefit to violate that duty. *Liberty Title & Trust Co. v. Plews,* 6 *N. J.* 28, 39 (1950); *Bankers Trust Co. v. Bacot, supra;* 2 *Scott on Trusts, sec.* 170, *p.* 856;

6 *N. J. Practice, Wills & Administration, sec.* 499, *p.* 437. See *Camden Trust Co. v. Cramer,* 136 *N. J. Eq.* 261 (*E. & A.* 1945); *Brown v. Corn Exchange Nat. Bank, etc., Co.,* 136 *N. J. Eq.* 430, 437 (*Ch.* 1945), modified 137 *N. J. Eq.* 507 (*E. & A.* 1946); *In re Brueck,* 124 *N. J. Eq.* 62 (*E. & A.* 1938).

The trustee's interest must yield to that of the beneficiaries. *Bankers Trust Co. v. Bacot, supra,* at *p.* 437; 2 *Scott on Trusts, sec.* 170.25, *p.* 909; *Meinhard v. Salmon,* 249 *N. Y.* 458, 465, 165 *N. E.* 545, 546, 62 *A. L. R.* 1 (*Ct. of App.* 1928). And the rule that fiduciaries are not to deal in their own behalf with respect to matters involved in their trusts "operates irrespectively of the good faith or bad faith of such dealing." *In re Kline,* 142 *N. J. Eq.* 20 (*E. & A.* 1948). *Cf. Liberty Title & Trust Co. v. Plews, supra.*

Where, under the facts and law above recited, a situation exists where the executors' personal interest has directly injured either the corporation or the estate, coupled with other instances of breach of duty to the estate, sufficient evidence is exhibited to persuade a court that their continuance in the fiduciary capacity is unwarranted.

### d. Cumulative incidental matters.

There are other incidental matters to be considered with the foregoing reasons for removal of the executors, namely, items concerning use of corporate funds for improvements on Barash's home which was treated lightly by the executors; Pollak's discharge from the company although he always performed his work faithfully, because his wife did not return her shares of the Warehouse Company stock and "he had offered the threat of discharging" Kislak; and Jacob (Jack M.) Koretzky's discharge as director, officer and employee of the Battery Company although Kislak drew his conclusion on this matter without having seen or talked to Jack, and did not observe Jack's conduct as director, and it was admitted there were no meetings while Jack was a director. The

directors, including Kadison and Isaac Gross, considered Jack's initial election "a gesture and nothing else." It is to be noted that Jack's participation in the substitution of certificates in the matter of the Warehouse Company stock did not result in inurement to his benefit but rather in a decrease of his interest in the Warehouse Company. Kislak indicated no disapproval of Jack until after Jack went to Kislak and suggested that Kislak resign as executor and trustee.

The record is replete with other evidence of open hostility on the part of the executors toward the four children of the testator, the beneficiaries of the estate. One explicit example of this attitude was the charge they made against the testator's children of complicity in the matter of the fraudulent issue of Warehouse Company stock. The executors conceded at the trial that none of the Koretzky children had had any part in the issuance of the stock and that the charges of fraud as to them were without foundation.

In passing, we note that the opinion below was involved to a considerable extent with consideration of the differences of opinion existing between Jacob (Jack M.) Koretzky who was the substantial beneficiary of the estate, and the executors, primarily Kislak. It is the duty of trustees to deal impartially with beneficiaries. 2 *Scott on Trusts, sec.* 183, *p.* 970, *etc.* Compare *Restatement, Trusts, sec.* 183. And even where a trustee does not act in bad faith, the court will interfere when he acts from an improper motive. 2 *Scott on Trusts, sec.* 187.5, *p.* 999. Compare *Bankers Trust Co. v. Bacot, supra,* at *pp.* 436–437.

There is authority to the effect that the conduct of a fiduciary toward the beneficiary of his trust causing mutual animosity between them may invoke the exercise by a court of equity of its power to remove a trustee. See *May v. May,* 167 *U. S.* 310, 42 *L. Ed.* 179 (1897); *Braman v. Central Hanover Bank & Trust Co.,* 138 *N. J. Eq.* 165 (*Ch.* 1946); *McAllister v. McAllister,* 120 *N. J. Eq.* 407, 420 (*Ch.* 1936), affirmed 121 *N. J. Eq.* 264 (*E. & A.* 1937); *Lister v. Weeks,*

*supra,* at *p.* 228. However, the mere fact that a beneficiary disagrees with a fiduciary's proper exercise of discretionary powers, or is resentful of the fiduciary's authority, or is antagonized by his personality, is not sufficient to cause his removal. Trust estates are created primarily for the protection of a beneficiary, against his own acts as well as those of others, and the authority which the creator of an estate places in a fiduciary may at times be unpleasant to a headstrong beneficiary.

In addition to the many instances of dereliction on the part of the executors, we agree with the trial court that many witnesses were repeatedly guilty of misstatements and contradictory statements. Among those making demonstrably false statements were the executors themselves. Kislak, in addition, was shown to have testified at the trial in direct contradiction to his testimony taken prior to trial and he was so argumentative on the stand that the trial court repeatedly was forced to admonish him.

There was considerable testimony concerning the testator's alleged statements relating to Jacob (Jack M.) Koretzky's position in the corporations, and testator's alleged wishes directed to rewriting the will in several particulars, including his alleged intention to delete the designation of Kadison and Kislak as executors and trustees. We find it unnecessary to base our conclusions on this testimony. Inasmuch as no question is raised as to its admissibility the court will not at this time express an opinion thereon.

II — *Counsel fees to plaintiff.*

In the appeal on the suit for removal of the executors, the plaintiff contends that the trial court erred in adjudging that it was without jurisdiction to allow counsel fees because there was no fund in court. See *Rule* 3:54–7(*b*). That there was "fund in court" is apparent, for the action of the plaintiff in seeking the removal of the executors was for the protection of the estate. *Katz v. Farber,* 4 *N. J.* 333 (1950); *Cintas v. American Car & Foundry Co.,* 133 *N. J. Eq.* 301

(*Ch.* 1943), affirmed 135 *N. J. Eq.* 305 (*E. & A.* 1943). And see *Milberg v. Seaboard Trust Co., supra,* at *p.* 245. The rule provides that the allowance of counsel fee is a matter of discretion. Upon the remand of this case it will be the duty of the trial court to determine the amount of the counsel fee to be allowed plaintiff.

### III — *Substituted trustee.*

The executors-defendants in the removal suit appeal from those portions of the judgment of the court below which appoint a substituted trustee, direct the executors to assign and deliver to said substituted trustee all the stock owned by the decedent in the Bright Star Battery Company and the Bright Star Warehouse Company, vest voting rights in connection with such stock in the said substituted trustee, enjoin the executors from interfering with the operations and management of said corporations, direct the executors to resign as directors and officers of said corporations, and vest the management and operations of the said corporations exclusively in the substituted trustee.

As has been stated, we are of the opinion that the executors should be removed. This necessitates a modification of the judgment of the court below for conformity to our opinion and removes the necessity of detailed consideration of these portions of the judgment. However, it was error to vest the management and operations of the Battery and Warehouse corporations exclusively in the substituted trustee. The corporations were not made parties defendant. The business of a corporation is operated by its board of directors, and ownership by the estate of the controlling interest of the outstanding stock confers no power upon the fiduciaries of the estate (whether they be executors or trustees) to bind the corporation. *Blauvelt v. Citizens Trust Co., supra,* at *pp.* 551, 552. However, this does not mean that the exercise of the right and duty to *vote the stock* for election of proper directors is to be denied the fiduciary. See *D'Arcangelo v. D'Arcangelo,* 137 *N. J. Eq.* 63, 67 (*Ch.* 1945).

■ In view of the fact that there remains to be performed a considerable amount of labor in the settlement of the estate of Israel Koretzky, deceased, (principally in connection with debts and estate taxes) it is advisable that a substituted administrator with the will annexed be appointed. This is within the jurisdiction of the Chancery Division of the Superior Court in this case. *In re McFeely,* 8 *N. J.* 9 (1951). The judgment should be modified accordingly; it appears judicious to place all the assets of the estate in the hands of the substituted administrator with the will annexed until such time as the estate may be settled, and to that end the same individual appointed as substituted trustee should ·in this case be appointed as such substituted administrator.

IV — *Consent to payment to Barash.*

The executors-defendants noticed appeal from so much of the judgment of the trial court as voided Jacob (Jack M.) Koretzky's written consent to the $25,000 payment to Abraham I. Barash hereinbefore discussed. The executors-defendants' arguments in this connection are without merit and that portion of the judgment will be affirmed for the reasons stated in the opinion of the trial court.

V — *Affidavit expunged from the record.*

■ Plaintiff noticed appeal from an order of the trial court entered April 3, 1951, expunging a certain affidavit from the record. This matter has not been briefed nor argued and must be considered abandoned. Therefore, as to such order the appeal must be and is hereby dismissed.

IN THE MATTER OF THE ACCOUNTING OF THE EXECUTORS
OF ISRAEL KORETZKY, DECEASED

I — *Whether the accounting of the executors should have been allowed.*

The exceptants in the accounting proceedings in the former Prerogative Court appeal from so much of the decree of that court as confirms the master's report in connection with the

dismissal of the fourth exception to the account wherein the exceptants had sought to have approval of the account stayed, and allowances to the executors withheld, pending the outcome of the suit brought against the executors for their removal (hereinbefore discussed). The exceptants' argument is that, confronted upon the accounting and upon application. for allowances with proof that issues relating to a breach of trust by the executors had been tendered to the former Court of Chancery, it was an abuse of discretion on the part of the former Prerogative Court to deny ʻthe stay of confirmation of their account and grant of allowances pending the outcome of the removal suit. The executors contend that because they were required by law to file their account and the exceptants offered no proof of dereliction on the part of the executors, the court properly allowed their account with commissions and counsel fee. *In re Megargee*, 117 *N. J. Eq.* 347 (*Prerog.* 1934) is cited by both the executors and the court below in support of this argument. In the *Megargee* case, however, the decision of the former Prerogative Court (reversing the Orphans' Court's denial of commissions) came after the removal of the executors by the Orphans' Court had been set aside and the executors reinstated on appeal (see *p.* 351). In the present matter application of the executors' theory would have required the trial by the Prerogative Court of the issues then pending in the Court of Chancery. The exceptants did not seek absolute denial of confirmation of the account and the allowances but merely a stay pending the outcome of that equity suit. It is true that *removal* of executors was not sought in the Chancery suit *at the time this accounting was before the Prerogative Court*, for alleged jurisdictional reasons, but the amended bill of complaint (which was submitted in proof in the accounting proceedings) charged the derelictions of the executors and sought injunctive relief to prevent the executors-defendants from acting as directors and proof of the accusations would have required either a denial or a considerable reduction of the allowance of commissions. This

bill was subsequently amended (see recital of proceedings *ante*) after the decree in the accounting proceedings to seek removal of the executors on the same allegations of facts.

In effect, the exception to the account seeking the stay was in the nature of a motion for continuance to permit the taking of proofs and the rendition of judgment on the charges of breach of duty by the executors. A motion for continuance is addressed to the sound discretion of the trial judge to be exercised with a view to the manifest rights of the parties and the prevention of injustice and oppression under all the circumstances of the case, and the exercise of this discretion will be interfered with by an appellate tribunal only when the action of the trial court constituted a clear abuse of that discretion. *Hawthorne v. Jowett*, 121 *N. J. L.* 38, 39 (*E. & A.* 1938); *Heinz v. Atlantic Stages, Inc.*, 113 *N. J. L.* 321, 325 (*E. & A.* 1934); *Haines v. Roebuck*, 47 *N. J. L.* 227, 228–229 (*Sup. Ct.* 1885). The exercise of discretion implies conscientious judgment, not arbitrary action. *Carlo v. Okonite Callender Cable Co.*, 3 *N. J.* 253, 262–263 (1949).

Under the circumstances of this case, it is clear that the refusal of the former Prerogative Court to stay the allowances and confirmation of the account upon exception to the account was an abuse of discretion which injuriously affected the substantial rights of the exceptants and tended to permit injustice to occur.

*R. S.* 3:11–7 provides that a fiduciary removed for cause under *R. S.* 3:12–4, *supra*, "shall forfeit his commissions and shall not be entitled to any commissions or compensation for his services, unless the court shall otherwise direct." *R. S.* 3:7–76 provides that a fiduciary removed or discharged by any court shall, within 60 days or such shorter or longer period as the court may direct, state and settle his account before the chancellor, ordinary or Orphans' Court, as the case may be, for all the assets of the estate in his charge. We shall therefore reverse the decree of the former Prerogative Court as to the portions appealed from and remand the

matter of the accounting of the executors of Israel Koretzky deceased to the Chancery Division of the Superior Court with the direction that the original accounting shall be opened and continued for the purpose of complete accounting as required of the executors by statute upon their removal as such executors, including examination anew into the question of allowance of commissions and counsel fees, that substantial justice may be done under all the circumstances surrounding this matter consistent with this opinion.

II — *The allowance of counsel fee.*

We are of the opinion that the abuse of discretion above examined affects the decree of the former Prerogative Court as to all allowances. Therefore the matter of the allowance of counsel fees and the amount thereof must be re-examined in the light of all the circumstances surrounding the estate upon the remand of the matters of accounting to the Chancery Division of the Superior Court.

### Conclusion

For the reasons stated in this opinion, the judgment of April 3, 1951, of the Chancery Division of the Superior Court in the case of *Koretzky v. Kislak* (A–44, the injunction or removal suit) is:

*Reversed as to*: (a) the refusal to remove Julius I. Kislak, Isaac Gross and Louis Kadison as executors of the estate of Israel Koretzky, deceased, and such removal is hereby directed;

(b) the determination that the said Chancery Division of the Superior Court was without power to allow counsel fees;

(c) The vesting of management and operations of the Bright Star Battery Company and the Bright Star Warehouse Company in the substituted trustee;

*Modified*: (a) so that the said Superior Court, Chancery Division, may appoint Walter T. Margetts as substituted

administrator with the will annexed, in the estate of Israel Koretzky, deceased, upon the entry of such security as the said Superior Court, Chancery Division, may direct and order transfer of the assets of the estate by the executors to the substituted administrator with the will annexed;

(b) as to those portions of the judgment contemplating transfer of the stock of the Bright Star Battery Company and the Bright Star Warehouse Company to the substituted trustee and the vesting of powers in the substituted trustee in connection therewith, so that transfer of any of the assets of the estate to the said substituted trustee may be delayed pending the full settlement of the estate, including accounting by the removed executors and final accounting by the substituted administrator, incidental powers to be vested in said substituted administrator until final settlement and distribution of the estate.

*Affirmed as to*: (a) the injunction against the executors-defendants from qualifying as trustees under the last will and testament of Israel Koretzky, deceased;

(b) the invalidation and cancellation of the consent of Jacob (Jack M.) Koretzky to the $25,000 payment to Abraham I. Barash;

(c) the injunction against the executors-defendants to prevent their interference in operations and management of the Bright Star Battery Company and the Bright Star Warehouse Company;

(d) the direction that Isaac Gross, Julius I. Kislak and Louis Kadison resign as officers and directors of the Bright Star Battery Company and the Bright Star Warehouse Company;

(e) the appointment of Walter T. Margetts as trustee under the last will and testament of Israel Koretzky, deceased, as provided in paragraph 4 of said judgment;

(f) the retention of jurisdiction by the trial court for incidental relief;

(g) the stay of operation of the judgment pending appeal.

The costs in this action (A–44) are allowed to Jack M. Koretzky, sometimes known as Jacob Koretzky, plaintiff-respondent, and Lillian Horton, defendant-respondent, on the appeal, and to the same parties on their cross-appeal.

For the reasons stated in this opinion the decree of the former Prerogative Court in the matter of the accounting of the executors of Israel Koretzky, deceased, (A–43) is reversed as to the portions appealed from and remanded to the Chancery Division of the Superior Court with the direction that the original accounting shall be opened and continued for the purpose of complete accounting as required of the executors by statute upon their removal as such executors, including examination anew into the question of allowance of commissions and counsel fees, that substantial justice may be done under all the circumstances surrounding this matter consistent with this opinion, with costs to the appellants, Jacob Koretzky, Lillian Horton and Jeanette Pollak.

The mandate of this court shall remand these cases to the Chancery Division of the Superior Court for compliance with the foregoing specific instructions, and for such other and further proceedings as shall not be inconsistent with this opinion.

CASE, J. (dissenting in No. A–44). I am for an affirmance of the judgment below except that I am not in accord with the removal of Julius I. Kislak from the position of testamentary trustee. It would be confusing and not helpful for me to review the voluminous and contradictory proofs. Enough to say that in my opinion Mr. Kislak met the many and perplexing problems of the estate with sound business judgment, unimpaired by so serious a fault as should result in his removal by the court from the position of trust to

which he was appointed by the friend whose estate he was administering. This brings me to a corresponding modification of the judgment and an affirmance as so modified.

No. A-43:

*For reversal*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and ACKERSON—4.

*For affirmance*—Justice CASE—1.

No. A-44:

*For modification*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and ACKERSON—4.

*For affirmance*—Justice CASE—1.